TRAIL ENTERPRISES, INC. d/b/a
Wilson Oil Company,
Appellant,

v.

CITY OF HOUSTON, Appellee.

No. 14–96–00689–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 20, 1997.

Bruce Manuel Partain, Jim Mitchell Smith, Beaumont, Howard W. Edmunds, Houston, for appellant.

Judy K. Hatfield, Houston, for appellee.

Before YATES, HUDSON and FOWLER, JJ.

## OPINION

YATES, Justice.

This appeal is from a summary judgment granted in favor of appellee, the City of Houston (the City), on the ground that limitations barred appellant's claim of inverse condemnation of its mineral rights in property located under Lake Houston. Appellant, Trail Enterprises, Inc. d/b/a Wilson Oil Company, raises ten points of error contending the trial court erred in granting the City's motion for summary judgment and in deny-

ing its cross-motion for partial summary judgment. We affirm.

## BACKGROUND

Wilson Oil Company (Wilson) is the lessee under two oil and gas leases covering land out of a 985–acre tract adjacent to and beneath Lake Houston, which is either within the City limits or within the City's extraterritorial jurisdiction (ETJ).[1] The City acquired the surface estate of 45.9 acres of the 985–acre tract in 1948 for the purpose of constructing Lake Houston. The deed to the City was made subject to the mineral leases to Wilson and others, and reserved the grantor's right to drill and operate wells on the property, so long as the drilling, exploration and production did not endanger, damage or pollute the reservoir.

On March 27, 1954, the City and Wilson entered a contract whereby the City agreed to pay Wilson to elevate twelve wells that would be inundated with the flooding for the lake. In the contract, Wilson agreed that any drilling, exploration or production would not endanger, damage or pollute the reservoir.

On May 19, 1965, the City passed Ordinance 65–912 to control the pollution of Lake Houston. On December 20, 1967, the City passed Ordinance No. 67–2544, currently section 23–102 of the City's Code (the Ordinance), which amended Ordinance No. 65–912. The amendment prohibits the drilling of wells within the "control area" of Lake Houston nearer than 1000 feet from Lake Houston or any of its drains, streams, or tributaries, or at an elevation of less than 48 feet above mean sea level. In the current codification of the Ordinance, "control area" is defined as "[t]hat land contained in the extraterritorial jurisdiction of the city, which contains waters that flow into or adjacent to the watershed of Lake Houston."[2] There is no provision for a hearing to request a variance or exception to the drilling prohibition.

1. Appellant's leasehold estate is part of a 985–acre lease granted by H.C. House to Producers Oil Company on March 1, 1912. On June 5, 1934, Producers' successor assigned a lease covering 885 acres of the tract to the original Wilson Oil Company. Appellant does business under the assumed name of Wilson Oil Company, but the record does not indicate that appellant is affiliated with the former company.

2. The city's extraterritorial jurisdiction extends five miles outside the city limits.

Forest Cove Development Company (Forest Cove) obtained the mineral leasehold interests at issue on April 1, 1972. Forest Cove assigned the leases to appellant, its wholly-owned subsidiary, Trail Enterprises, Inc. (Trail), on May 29, 1986. Trail Enterprises operates under the assumed name of Wilson Oil Company.

On December 9, 1994, appellant requested a variance hearing to acquire an exemption from the Ordinance so that it could obtain a permit to drill on its leases. The City did not respond. On June 28, 1995, appellant filed suit against the City requesting a declaratory judgment that the Ordinance is unconstitutional and void. Appellant claimed the Ordinance resulted in a taking of its property rights without just compensation and sought damages for inverse condemnation.

Appellant filed a motion for partial summary judgment, reserving the litigation of its damages for trial. Appellant raised the following grounds: (1) the City deprived it of its property without due process; (2) it was denied equal protection; (3) the City impaired its contract rights; (4) the Ordinance is a retroactive law; and (5) the Ordinance resulted in a taking without compensation. In addition, appellants alleged the City's defenses to its claims were barred by estoppel. The City responded, alleging that: (1) the Ordinance is a constitutionally valid use of its police power; (2) the Ordinance is not arbitrary or capricious; (3) appellant failed to establish a taking occurred; (4) if a taking occurred, it happened on December 20, 1967, and is barred by limitations; and (5) the variance request did not revive the barred causes of action. The City then filed its motion for "final" summary judgment on the ground that all of appellant's claims are barred by limitations because they are related to the purported taking, accrued in 1967, and were barred as a matter of law ten years later, at the latest. The trial court granted the City's motion and, by separate order, denied appellant's motion. This appeal resulted.

## STANDARD OF REVIEW

■ First, we must resolve a conflict concerning our ability to review the denial of appellant's motion for partial summary judgment. Generally, an order denying a summary judgment is not appealable because it is an interlocutory order. *Novak v. Stevens*, 596 S.W.2d 848, 849 (Tex.1980). However, an exception exists when both parties move for summary judgment on the entire case, and the court grants one of the motions and overrules the other. *See Members Mut. Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325, 328 (Tex.1984); *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400 (1958). Some courts hold that we may review the denial of a "cross-motion" only when the motion entitles the court to finally resolve the entire case, including rendition of the appropriate judgment. *Jensen Constr. Co. v. Dallas County*, 920 S.W.2d 761, 767–68 (Tex.App.—Dallas 1996, writ denied). Under this reasoning, we may not review the denial of a partial summary judgment which is not otherwise subject to appellate review. *See Rice v. English*, 742 S.W.2d 439, 446 (Tex.App.—Tyler 1987, writ denied) (op. on reh'g) (holding that denial of a motion for partial summary judgment is an interlocutory order not subject to appellate review).

■ Recently, the Texas Supreme Court held that we "should review all summary judgment grounds the trial court rules on and the movant preserves for appellate review that are necessary for final disposition of the appeal...." *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996). Here, the trial court expressly granted the City's motion for summary judgment and denied appellant's motion for partial summary judgment by separate orders. Appellant raises separate points of error complaining of the denial of its motion. Therefore, because the grounds raised in appellant's motion for partial summary judgment are necessary to the disposition of the appeal, are preserved, and were ruled upon by the trial court, we should address all of these grounds on appeal.

■ When both parties file motions for summary judgment, we must determine on appeal all questions presented, including the propriety of the order overruling the losing party's motion. *Jones v. Strauss*, 745 S.W.2d

898, 900 (Tex.1988). The court may consider all evidence in deciding whether to grant either motion. *Dallas County Appraisal Dist. v. Institute for Aerobics Research,* 766 S.W.2d 318, 319 (Tex.App.—Dallas 1989, writ denied). Additionally, the court may rely on one party's evidence to supply missing proof in the other party's motion. *DeBord v. Muller,* 446 S.W.2d 299, 301 (Tex.1969).

■ A summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). To prevail, a defendant must establish as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of each of the plaintiff's causes of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). A summary judgment for the defendant disposing of the entire case is proper only if, as a matter of law, the plaintiff could not succeed upon any theories pleaded. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). Summary judgment is also proper for a defendant if it conclusively establishes all elements of its affirmative defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

## STATUTE OF LIMITATIONS

In appellant's first point of error, it complains generally that the trial court erred in granting the City's motion for summary judgment. In points two and three, it argues its claims are not barred by the two-year or ten-year statutes of limitations.

Appellant has alleged a claim for taking without just compensation. The Fifth Amendment to the United States Constitution provides that private property shall not be taken for public use without just compensation. U.S. CONST. amend. V. The provision is applicable to the states under the due process clause of the Fourteenth Amendment. The Texas Constitution also contains a "takings clause," which provides in part that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being

made, unless by consent of such persons...." TEX. CONST. art. 1, § 17.

■ If the government appropriates property without paying adequate compensation, the owner may recover the resulting damages in an "inverse condemnation" suit. *See, e.g., City of Austin v. Teague,* 570 S.W.2d 389 (Tex.1978); *City of Abilene v. Burk Royalty Co.,* 470 S.W.2d 643 (Tex. 1971). An inverse condemnation may occur when the government physically appropriates or invades the property, or when it unreasonably interferes with the landowner's right to use and enjoy the property, such as by restricting access or denying a permit for development. *Taub v. City of Deer Park,* 882 S.W.2d 824, 826 (Tex.1994), *cert. denied,* 513 U.S. 1112, 115 S.Ct. 904, 130 L.Ed.2d 787 (1995); *Westgate, Ltd. v. State,* 843 S.W.2d 448, 452 (Tex.1992). Governmental restrictions on the use of property can be so burdensome that they result in a compensable taking. *San Antonio River Auth. v. Garrett Bros.,* 528 S.W.2d 266, 273 (Tex.Civ.App.— San Antonio 1975, writ ref'd n.r.e.).

■ All property, however, is held subject to the valid exercise of the police power, and a municipality is not required to compensate a landowner for losses resulting therefrom. *See City of College Station v. Turtle Rock Corp.,* 680 S.W.2d 802, 804 (Tex.1984); *Woodson Lumber Co. v. City of College Station,* 752 S.W.2d 744, 746 (Tex.App.—Houston [1st Dist.] 1988, no writ). A city may enact reasonable regulations to promote the health, safety, and general welfare of its people. *Turtle Rock Corp.,* 680 S.W.2d at 805.

The United States Supreme Court has stated, "government regulation—by definition—involves the adjustment of rights for the public good. Often this adjustment curtails some potential for the use or economic exploitation of private property. To require compensation in all such circumstances would effectively compel the government to regulate by purchase." *Andrus v. Allard,* 444 U.S. 51, 64, 100 S.Ct. 318, 326, 62 L.Ed.2d 210 (1979). As Justice Holmes stated in the landmark decision of *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922), "[g]overnment

hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized some values are enjoyed under an implied limitation and must yield to the police power." When a government regulates a right, prohibits some noxious use, or if the public need outweighs the private loss, compensation should not be allowed. *Teague,* 570 S.W.2d at 393.

 There is no statutory provision specifically providing a limitations period for inverse condemnation actions. The courts in Texas agree, however, that a plaintiff's cause of action for inverse condemnation is barred after the expiration of the ten-year period of limitations to acquire land by adverse possession, which is found in TEX. CIV. PRAC. & REM.CODE ANN. § 16.026 (Vernon 1986).[3] *See Brazos River Auth. v. City of Graham,* 163 Tex. 167, 354 S.W.2d 99, 110 (1961) (holding that ten-year limitations period applied while rejecting claim that two-year limitations barred action for taking that occurred when operation of dam and formation of lake caused flooding of sewage disposal plant); *Waddy v. City of Houston,* 834 S.W.2d 97, 102 (Tex.App.—Houston [1st Dist.] 1992, writ denied) (affirming summary judgment where city established that sewer pipe's installation seventy years before suit was filed was significantly more than ten-year limitations period for inverse condemnation); *Hudson v. Arkansas Louisiana Gas Co.,* 626 S.W.2d 561, 563 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.) (reversing a summary judgment where the trial court failed to apply ten-year limitations period to inverse condemnation claim); *Hubler v. City of Corpus Christi,* 564 S.W.2d 816, 823 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.) (distinguishing ten-year limitations period for "taking" from two-year period for "damaging" of property). The two-year limitations period for actions for trespass or damage to land is not applica-

ble here. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 (Vernon 1976 & Supp.1997).

While the City does not agree that a taking has occurred, it asserts that if the Ordinance does constitute a regulatory taking, appellant's claim accrued in 1967 when the Ordinance was passed. Consequently, the City asserts appellant's claim is barred by the ten-year limitations period found in TEX. CIV. PRAC. & REM.CODE ANN. § 16.026 (Vernon 1986).

 Appellant contends there are several reasons why its claims are not barred. First, it argues that its request for a variance in 1994 somehow revived its claim. It contends that by ignoring appellant's request for a variance, the City performed a second act of taking. We find no support for this position. For cases of adverse possession, a cause of action accrues and limitations begins to run when entry on land is made. *Waddy,* 834 S.W.2d at 103. When, as here, there has been no "entry" on land, but rather an interference with the right to use the property, limitations must begin when that interference first occurs. A cause of action accrues for limitations purposes when facts come into existence authorizing a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex. 1990). Any "taking" in this case occurred when the Ordinance prohibiting drilling was enacted, not when appellant was later denied a hearing on its request for a variance.

Appellant contends that the Texas Supreme Court's language in *Brazos River Authority* supports its argument that no limitations period applies. Appellant focuses on the Court's statement that "[i]n case of a 'taking' of property, the city's right thereto would not be barred *if ever* until the expiration of the ten year period necessary to acquire lands by adverse possession. . . ." 354 S.W.2d at 110 (emphasis added). Appellant argues that the Supreme Court used the

---

3. Section 16.026 provides in relevant part:
 A person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses or enjoys the property.
 TEX. CIV. PRAC. & REM.CODE ANN § 16.026(a) (Vernon 1986).

"Adverse possession" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person.
TEX. CIV. PRAC. & REM.CODE ANN. § 16.021(1) (Vernon 1986).

term "if ever" to indicate a claim for "taking" is never barred. We determine, however, that the *Brazos* Court's inclusion of "if ever" referred to its previous discussion recognizing that former article 5517. provided that statutes of limitations did not apply to cities.[4] *See id.* at 109. The Court also stated that "the great weight of American authority supports the position that, absent a particular statute covering the situation, the land limitation rather than the general limitation statutes apply to such inverse condemnation proceedings." *Id.* Appellant also argues the Court cited *Ackerman v. Port of Seattle* for the proposition that "an action for constitutional taking is not barred by any statute of limitations...." 55 Wash.2d 400, 405, 348 P.2d 664, 667 (1960). The *Ackerman* court actually stated that while an action for constitutional taking is not barred by limitations, it "may be brought at any time before title to the property taken is acquired by prescription. The prescriptive period in this state has been held to be ten years." *Id.* Thus, while the terminology may be different, the *Ackerman* case clearly found that a claim for "taking" or inverse condemnation must be brought within ten years. Consequently, both *Brazos* and *Ackerman* support the applicability of the ten-year limitations period to this case.

■ Nor do we accept appellant's argument that the City cannot prevail on its limitations claim because it failed to prove the elements of adverse possession. We do not read the cases applying the ten-year limitations period to inverse condemnation claims as requiring the defendant to establish the elements of adverse possession. Therefore, the City is not required to prove it made an "actual and visible appropriation of the land." In *Waddy,* the City was required to establish only the date the cause of action accrued, not the elements of adverse possession, to be entitled to summary judgment on limitations on plaintiff's inverse condemnation suit. 834 S.W.2d at 103. Moreover, the City's possession in *Waddy* was not "visible" because the plaintiff claimed he was unaware of the sewer pipe crossing his property when

he bought it. *Id.* at 100. Appellant makes a contradictory argument that the City cannot prove the elements of adverse possession because no taking has occurred and the cause of action has not yet accrued. The City correctly responds that appellant cannot have it both ways: it cannot sue for a taking and deny that the cause of action has accrued. Because proof of the elements of adverse possession are not required when asserting the ten-year limitations period for an inverse condemnation suit, we conclude that the ten-year period applies to a regulatory taking, as well as when there has been an actual physical invasion or appropriation of property.

■ To prove its limitations defense, the City was required to establish when the cause of action accrued. *Waddy,* 834 S.W.2d at 103. The City asserted that any taking occurred when the Ordinance prohibiting drilling was passed. Appellant pleaded "Ordinance 67–2544 violated the Fifth Amendment to the United States Constitution [and Article I, section 17 of the Texas Constitution] because it was a taking of Plaintiff's property for public use without the payment of just compensation and without Plaintiff's consent. It was an act of inverse condemnation." Appellant's pleadings admit that the Ordinance was passed on December 20, 1967. Appellant also pleaded that the Ordinance did not permit exceptions. Because it provided no procedure for a variance or appeal, the Ordinance was final when implemented and any further action was futile. *See Town of Sunnyvale v. Mayhew,* 905 S.W.2d 234, 246 (Tex.App.—Dallas 1994, writ granted).

■ A party may plead itself out of court by pleading facts that affirmatively negate its cause of action. *Texas Dep't of Corrections v. Herring,* 513 S.W.2d 6, 9 (Tex. 1974). A summary judgment may not be based upon a weakness in the nonmovant's pleading or proof unless it establishes the absence of a right of action or an insurmountable bar to recovery. *State v. Durham,* 860 S.W.2d 63, 68 (Tex.1993). Where the plaintiff's pleadings establish that the statute of limitations has run, pleadings alone

---

4. Under current law, a city's right of action is also not barred by section 16.026, among other limitations statutes. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.061(a) (Vernon 1997).

can justify summary judgment. *Washington v. City of Houston,* 874 S.W.2d 791, 794 (Tex.App.—Texarkana 1994, no writ). Appellant did not plead or prove that it did not discover its cause of action until a later date; thus the City had no burden to negate the discovery rule. Therefore, the City established its limitations defense as a matter of law.

### ESTOPPEL

In point of error four, appellant argues that the City is estopped from asserting its affirmative defense of limitations. Appellant argues that the City cannot disavow its obligations contained both in its contract with Wilson and in the reservation of mineral rights contained in the City's deed. It claims that these agreements are covenants running with the land. Appellant contends the City is estopped from "testifying or offering evidence in derogation of Wilson Oil's title because of the common law doctrines of estoppel by deed, by contract, and by record; the sanctity of mineral reservations in a deed; the sanctity of covenants that run with the land." [5]

■■■ If in response to a motion for summary judgment on limitations, a nonmovant asserts an affirmative defense such as estoppel, it has the burden of raising a fact issue with respect to its affirmative defense. *Zale Corporation v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.1975); *Nichols v. Smith,* 507 S.W.2d 518, 521 (Tex.1974). It must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984); *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 936–37 (Tex. 1972).

These same claims are raised in appellant's point of error complaining of the denial of its motion for partial summary judgment. In point of error eight, appellant contends the

Ordinance impaired its contractual rights in violation of both the federal and Texas constitutions. As the movant for summary judgment, appellant was required to establish his contract claim as a matter of law. *See* TEX.R. CIV. P. 166a(c).

■■■ As a general rule the doctrine of estoppel does not apply against a governmental unit exercising governmental functions. *Bowman v. Lumberton I.S.D.,* 801 S.W.2d 883, 888 (Tex.1990); *Dallas Cent. Appraisal Dist. v. G.T.E. Directories Corp.,* 905 S.W.2d 318, 322 (Tex.App.—Dallas 1995, writ denied); *Farmer's Marine Copper Works, Inc. v. City of Galveston,* 757 S.W.2d 148, 152 (Tex.App.—Houston [1st Dist.]1988, no writ). Appellant concedes that the Texas Constitution permits laws impairing contracts when the public safety and welfare must be protected. The provision in the Texas constitution prohibiting laws which impair the obligations in contracts is not absolute and must be balanced against a state's interest in exercising its police power. *Texas State Teachers Ass'n v. State,* 711 S.W.2d 421, 424–25 (Tex.App.—Austin 1986, writ ref'd n.r.e.). As more fully discussed herein, the City's prohibition on drilling is a valid exercise of its police power.

■■■ In addition, the City has not acted in derogation of its contract with Wilson or the mineral reservation in its deed. Both permitted drilling only if there was no pollution of the Lake. The record indicates that the Ordinance was passed after a "great number of complaints" about drilling in the control area of Lake Houston. In October 1967, the Director of the Department of Public Works wrote the mayor that "[t]he wells that have been drilled have caused a degree of pollution to the Lake waters by the drilling of oil wells, thereby allowing pollutants to seep or flow into ditches, reservoirs, and gullies that ultimately drain or wash into the lake." We determine that appellant's estop-

---

5. The City is not, as appellant argues, attempting to negate appellant's *title* to the mineral interests by virtue of its leases and the reservation in the City's deed. Appellant still possesses its leasehold interest in the minerals, but its ability to produce them has been restricted. If appellant had defeated the City's claim of a valid use of its

police powers and established that the Ordinance constituted a taking, i.e., that it could not obtain access to the minerals through directional drilling or any other means, then it would have been entitled to compensation had it brought its claim within the limitations period.

pel and contract claims do not preclude the City from asserting its limitations defense as a matter of law.

In conclusion, appellant's cause of action for inverse condemnation is barred by limitations and the City is entitled to summary judgment as a matter of law. We overrule appellant's points of error one through four and eight.

## CONSTITUTIONAL ARGUMENTS

In point of error five, appellant asserts generally that the trial court erred in denying its motion for partial summary judgment. In points six and ten, appellant contends the City, through its Ordinance, deprived it of its property without due process in violation of article I, section 19 of the Texas Constitution and the Fifth and Fourteenth Amendments to the U.S. Constitution.

■ Appellant first argues it was deprived of procedural due process because it was denied notice and an opportunity for hearing before loss of its property interest. It complains that the Ordinance was passed on an "emergency" basis after its first reading. In addition, it contends the city council's agenda was not specific and did not constitute sufficient notice to alert property or mineral owners that a drilling prohibition would be considered.[6]

Appellant did not own the mineral interests when the Ordinance was passed in 1967. Therefore, the facts surrounding the passage of the Ordinance are immaterial. When Forest Cove, the parent company of Trail, which does business as Wilson and is domiciled in Houston, acquired the leases in 1972, it was charged with notice of the Ordinance. *See City of Dallas v. Coffin*, 254 S.W.2d 203, 206–07 (Tex.Civ.App.—Austin 1953, writ ref'd n.r.e.). One is charged with constructive notice of the actual knowledge that could have been acquired by examining public records. *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981). Those residing in or having business dealings with a city are presumed to know its

ordinances. *Board of Adjustment of the City of San Antonio v. Nelson*, 577 S.W.2d 783, 786 (Tex.App.—San Antonio), *aff'd*, 584 S.W.2d 701 (Tex.1979). We hold appellant was charged with constructive notice of the Ordinance and its procedural due process challenge must fail as a matter of law.

Appellant also contends it was deprived of substantive due process because the Ordinance mandated a complete ban on drilling. In addition, appellant raises an equal protection challenge in its point of error seven. Appellant contends the Ordinance requires a small group of mineral interest owners with interests in the control area, which is in the City's ETJ, to pay the cost of protecting the City's water supply. Appellant argues: "mineral owners within the city limits are free to drill within 1000 feet of the lake and its drains (including man-made), streams, or tributaries regardless of the proximity of the wells to Lake Houston." The City responds that the Ordinance applies equally to all mineral interest owners whose interests are within the City's ETJ in the Lake Houston control area. In addition, the summary judgment record does not contain evidence of other drilling in the area of Lake Houston.[7]

■ The standard of review for a substantive due process challenge is whether the statute has a reasonable relation to a proper legislative purpose, and whether it is arbitrary or discriminatory. *Cannon v. Lemon*, 843 S.W.2d 178, 183 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Similarly, to pass equal protection scrutiny under a rational basis review, an ordinance's classification must be rationally related to a legitimate state interest. *City of Austin v. Quick*, 930 S.W.2d 678, 692 (Tex.App.—Austin 1996, writ granted).

■ When a city government passes an ordinance that is final and conclusive, it cannot be revised by the courts unless the passing of the ordinance was arbitrary, unreasonable, and a clear abuse of power. *Safe Water Foundation of Texas v. City of Hous-*

---

6. The Agenda simply stated: "Amend Sec. I of Ord. No. 65–912 passed May 19, 1965, regulating controlling & prohibiting pollution of Lake Houston."

7. The location of wells shown on an unauthenticated Railroad Commission gas production ledger cannot be determined.

*ton,* 661 S.W.2d 190, 192 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). There is a presumption in favor of the validity of the ordinance and appellant faces an "extraordinary burden" when asserting an ordinance is unconstitutional. *Turtle Rock Corp.,* 680 S.W.2d at 805.

 The City asserts that this regulation is a legitimate exercise of its police power. It contends it is reasonable to prohibit drilling in the area of its watershed to protect the City's water supply. The right of an entity to conduct oil and gas activities in this state is not an absolute right, but a qualified right subject to reasonable restriction by the state. *See Elliff v. Texon Drilling Co.,* 146 Tex. 575, 210 S.W.2d 558, 561 (Tex.1948); *see also R.D. Oil Co. v. Railroad Comm'n of Texas,* 849 S.W.2d 871, 875 (Tex. App.—Austin 1993, no writ) (holding that commission order directing that wells be plugged after a finding of potential pollution did not constitute a taking without due process). Reasonable regulations to promote the health, safety, and the general welfare of its people is a valid exercise of a city's police power. *Turtle Rock Corp.,* 680 S.W.2d at 805. We hold that the Ordinance is a valid exercise of the City's police power as a matter of law.

Because the Ordinance is reasonably related to a legitimate state interest, protection of the City's water supply, it does not violate appellant's constitutional rights. This is true even though the Ordinance may have a greater effect on appellant as a member of a group of oil and gas lease holders with interests in the control area than it may have on other mineral owners. In *Helton v. City of Burkburnett,* a factually similar case, the Fort Worth Court of Appeals rejected an equal protection challenge to an ordinance regulating drilling and stated:

> The equal protection clause of the Fourteenth Amendment does not prohibit a municipality with properly delegated powers from enacting ordinances based on reasonable classification of the objects of the legislation or of the persons whom it affects. Ordinances will not be regarded as special and class legislative merely because they affect one class and not another, provided they affect all members of the same class alike; if a classification in municipal ordinances is reasonable, including all that may be said to be similarly situated and affecting alike all of those, there is no forbidden discrimination. Thus, specific municipal regulations for one kind of business, which may be necessary for the protection of the public, can never be the just ground of complaint because like restrictions are not imposed upon other businesses of a different kind....

619 S.W.2d 23, 24–25 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.).

The summary judgment evidence shows that the purpose of the Ordinance was to protect the City's main source of water supply from contamination caused by drilling of oil or gas wells within the prohibited control area. Measures to prevent contamination of Lake Houston caused by drilling for oil and gas in the area of its watershed are rationally related to the legitimate goal of protecting the City's water supply from pollution. Thus, there is a rational relationship between the purpose of the statute and its means, and appellant's substantive due process and equal protection rights have not been violated.

 In point nine, appellant contends the Ordinance is a retroactive law in violation of the Texas constitution. *See* Tex. Const. art. I, § 16. The constitution's prohibition against retroactive laws must be balanced against the state's interest in exercising its police power. *Texas State Teachers Assn,* 711 S.W.2d at 424–25. For the reasons previously discussed, any retroactive effect of the Ordinance is outweighed by the City's imperative need to protect its water supply from pollution. We overrule points of error five, six, seven, nine and ten.

## CONCLUSION

In conclusion, we affirm both the order granting the City's motion for summary judgment and the order denying appellant's motion for partial summary judgment.