Judgment Affirmed in Part, Vacated in Part, and Remanded, and Opinion
filed October 17, 2002









 

Judgment Affirmed in Part, Vacated in Part, and
Remanded, and Opinion filed October 17, 2002.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-00355-CV

____________

 

HENRY J.N. TAUB, Appellant

 

V.

 

AQUILA SOUTHWEST PIPELINE CORPORATION, Appellee

 



 

On Appeal from the 334th District Court

Harris County, Texas

Trial Court Cause No. 95-62160

 



 

O P I N I O N








The issue in this case is the scope of the legislature’s
grant of exclusive jurisdiction over eminent domain proceedings to the county
civil courts at law in Harris County.   Appellant
Henry J.N. Taub appeals a final judgment in a consolidated condemnation and
trespass case.  Rendered after two
partial summary judgments and a jury trial, the judgment (1) awarded appellee
Aquila Southwest Pipeline Corporation a permanent easement and right of way for
a natural gas pipeline on Taub’s property; (2) awarded Taub $1,386 in condemnation
damages, based on the jury’s findings; and (3) assessed costs against
Taub.  Concluding, as a matter of first
impression, the district court did not have jurisdiction over Aquila’s
condemnation action against Taub, we vacate that portion of the district court’s
judgment granting Aquila its easement and awarding Taub condemnation
damages.  We affirm the district court’s
judgment to the extent it incorporated its own earlier take nothing summary
judgment in favor of Aquila on Taub’s claims against Aquila.[1]

FACTUAL AND PROCEDURAL BACKGROUND

Taub is the owner of a 70-percent undivided interest in a
53-acre tract of land, lying partly in Waller County and partly in Harris
County.  The remaining 30-percent
undivided interest is owned by two trusts and three individuals.  Aquila is a publicly regulated gas utility,
holding a Texas Railroad Commission permit to operate gas pipelines in Texas.

In April 1995, in the Harris County Civil Court at Law,
Aquila filed a petition in condemnation against Taub and the co-owners of the
53-acre tract, seeking to condemn a  50-foot
wide natural gas pipeline easement.  On
April 19, 1995, the county civil court at law appointed special commissioners,
who set a hearing for May 18, 1995.  Two
of Taub=s co-owners received notice of the
hearing; Taub did not.  At the May 18
hearing, the commissioners assessed damages to the landowners, as their
interests appear, in the total amount of $2,741.[2]  Aquila deposited that amount into the registry
of the court.  The commissioners also
signed a notice to Taub of a hearing to be held November 27, 1995.

Around May 25, 1995, Aquila’s construction crew first entered
the property.  The crew completed
construction around June 26, and the pipeline began operating August 11, 1995.








On October 20, 1995, Taub was served with notice of the
November 27 commissioners’ meeting. 
Taub, however, was granted a continuance to January 4, 1996.

In the meantime, Taub sued Aquila in district court,
asserting common law trespass, unauthorized placement of signs, conversion of
topsoil, and wanton disregard of Taub’s rights. 
He sought general, special, exemplary, and punitive damages.[3]  He also sought a temporary restraining order,
a temporary injunction, a permanent injunction, and, in the alternative, a
declaratory judgment.  Aquila
counterclaimed for condemnation in that action, seeking the same easement it
sought in the county civil court at law.

On January 4, 1996, the commissioners met to hear Taub’s
evidence.  They again assessed damages to
the landowners, as their interests appear, in the total amount of $2,741.  Taub objected to the commissioners= award on several grounds, including
inadequate damages.

Aquila subsequently moved for partial summary judgment in the
county civil court at law.  The county
civil court at law granted Aquila’s partial summary judgment motion, ordering
that Aquila had conclusively established the right to condemn Taub=s property for a pipeline
easement.  Both parties agreed to
consolidate in the district court the cases then pending in the two different
courts, and the county civil court at law transferred its case to the district
court, where Taub’s trespass action and Aquila=s condemnation counterclaim were
still pending.[4]








Aquila also filed motions for summary judgment in the
district court.  The district court granted
Aquila’s motions, ordering that Taub take nothing on his claims against Aquila
and leaving only Aquila’s condemnation counterclaim against Taub=s 70-percent interest in the easement
to be tried.  The district court
submitted the condemnation case to a jury solely on the questions of the market
value of the permanent easement, damages to the remainder, and fair market rental
value of the temporary workspace easement. 
The jury found a fair market value of $1,320 for the permanent easement,
no damages to the remainder, and fair market rental value of $660.  The trial court rendered a final judgment on
December 22, 2000, awarding Aquila the requested easement, permitting Taub to
withdraw $1,386 plus interest from the amount Aquila had deposited into the
court’s registry, and ordering costs assessed against Taub and in favor of
Aquila.

DISCUSSION

In three issues, Taub challenges two summary judgments
rendered in favor of Aquila: (1) the first summary judgment rendered by the
county civil court at law granting the motion for partial summary judgment
filed by Aquila as plaintiff in the condemnation action, and (2) the second
summary judgment rendered by the district court granting motions filed by
Aquila as defendant in the trespass action. 
The first summary judgment condemned Taub’s interest in the easement
Aquila sought, and left only the amount of Taub=s damages to be determined.[5]  The second summary judgment ordered Taub take
nothing on his claims against Aquila. 
The final judgment, rendered by the district court, granted Aquila its
easement, awarded Taub the condemnation damages found by the jury, and assessed
costs against Taub and in favor of Aquila.[6]  The judgment concluded:  “This is a final judgment, intended to
resolve all claims remaining after the previous partial judgments rendered in
these actions.  All relief not granted
herein, or in a prior partial judgment entered in these actions, is denied.” 








I.

Jurisdictional
Issue

A.  Sua Sponte Review

Neither party in the initial briefs challenged the
jurisdiction of the district court  to
hear Aquila’s condemnation case.[7]  Nevertheless, a trial court has no discretion
to entertain a suit absent subject matter jurisdiction.  State v. John R. Phenix & Assocs.,
Inc., 6 S.W.3d 288, 290 (Tex. App.CHouston [14th Dist.] 1998, no pet.)
(citing Texas Ass=n of Business v. Texas Air Control Bd., 852 S.W.2d 440, 443 (Tex.
1993)).  Absence of subject matter
jurisdiction is fundamental error, which an appellate court must review at any
time it appears.  John R. Phenix,
6 S.W.3d at 290.  When lack of subject
matter jurisdiction is apparent from the record, it may be raised by the court
if not raised by the parties.  See
Texas Ass’n. of Business, 852 S.W.2d at 446 n.10.  An appellate court’s jurisdiction over the
merits of a case extends no further than that of the court from which the
appeal is taken.  George v. Phillips
Petroleum Co., 976 S.W.2d 363, 364B65 (Tex. App.CHouston [14th Dist.] 1998, no pet.).  Given the exclusive jurisdiction over eminent
domain proceedings specifically granted to the civil courts at law in Harris
County, we conclude, in what appears to be a case of first impression, the
district court lacked subject matter jurisdiction of Aquila’s condemnation
counterclaims.

B.  Jurisdictional
Provisions








(1) The Texas constitutional provision.  We begin with the grant of jurisdiction to the
district courts, as found in the Texas Constitution: “District Court
jurisdiction consists of exclusive, appellate, and original jurisdiction of all
actions, proceedings, and remedies, except in cases where exclusive,
appellate, or original jurisdiction may be conferred by this Constitution or
other law on some other court, tribunal, or administrative body.”  Tex.
Const. art. V, ' 8 (emphasis added). 
Thus, the constitution specifically envisions the enactment of laws
conferring exclusive jurisdiction over actions, proceedings, and remedies on
courts other than district courts.

(2) Exclusive jurisdiction over “eminent domain
proceedings, both statutory and inverse.”  Texas Government Code section 25.1032(c)
provides in relevant part:  “A county
civil court at law has exclusive jurisdiction in Harris County of eminent
domain proceedings, both statutory and inverse, regardless of the amount in
controversy.”  Tex. Gov=t Code Ann. ' 25.1032(c) (Vernon Supp. 2002).[8]  “Eminent domain” refers to “[t]he power to
take private property for public use by the state, municipalities, and private
persons or corporations authorized to exercise functions of state power.”  Black’s
Law Dictionary 523 (6th ed. 1990); see also Ft. Worth & D. C. Ry.
Co. v. Ammons, 215 S.W.2d 407, 409 (Tex. Civ. App.CAmarillo 1948, writ ref’d n.r.e.)
(stating eminent domain is right of the state, or of those to whom power has
been delegated, to condemn private property for public use, and to take
ownership and possession of property on paying owner due compensation).  “The process of exercising the power of
eminent domain is commonly referred to as ‘condemnation’ or ‘expropriation.’”  Black’s
Law Dictionary 523 (6th ed. 1990); see also A.C. Aukerman Co. v.
State, 902 S.W.2d 576, 577 (Tex. App.CHouston [1st Dist.] 1995, writ
denied) (stating condemnation is procedure by which a sovereign state exercises
its right to take private property for public use, without consent, but on
payment of just compensation).  Under
Texas Government Code section 25.1032(c), the Harris County Civil Court at Law
had exclusive jurisdiction over Aquila’s condemnation action.




C.  Aquila’s
Contentions Supporting Jurisdiction in the District Court

(1)  Specific
versus general provisions.  Aquila, however, directs this
court=s attention to Property Code sections
21.001 and 21.003.  Section 21.001
provides in part:  “District courts and
county courts at law have concurrent jurisdiction in eminent domain cases.”  Tex.
Prop. Code Ann. ' 21.001 (Vernon 1984). 
Section 21.003 provides:








A district court may determine all issues, including
the authority to condemn property and the assessment of damages, in any suit:

(1) in which this state, a political subdivision of
this state, a person, an association of persons, or a corporation is a party;
and

(2) that involves a claim for property or for damages
to property occupied by the party under the party=s
eminent domain authority or for an injunction to prevent the party from
entering or using the property under the party=s
eminent domain authority. 

 

Tex. Prop. Code Ann. ' 21.003 (Vernon 1984).  Both statutes predate the statute granting
exclusive eminent domain jurisdiction to Harris County Civil Courts at Law.

“[A] specific act is properly regarded as an exception to, or
qualification of, a general law on the same subject previously enacted.  In such a case both statutes are permitted to
stand, the general one being applicable to all cases except the particular one
embraced in the specific act.”  Sam
Bassett Lumber Co. v. City of Houston, 198 S.W.2d 879, 881 (Tex. 1947); see
Scurlock Permian Corp. v. Brazos County, 869 S.W.2d 478, 486 (Tex. App.CHouston [1st Dist.] 1993, writ
denied) (citing Sam Bassett for proposition that special or specific act
is properly regarded as exception to, or qualification of, general law on same
subject previously enacted); see also Davis v. Covert, 983 S.W.2d 301,
302B03 (Tex. App.CHouston [1st Dist.] 1998, pet. dism’d
w.o.j.) (en banc) (applying rule that, when two statutes conflict, specific
controls over general).  The general
grant of concurrent jurisdiction in Property Code section 21.001 and the
general grant of ancillary jurisdiction in Property Code section 21.003 must
yield to the specific grant of “exclusive jurisdiction” over “eminent domain
proceedings, both statutory and inverse,” found in Texas Government Code
section 25.1032(c).[9]








(2) Separate adjudication of issues. 
Aquila also argues requiring all condemnation actions to be heard in the
Harris County Civil Courts at Law will result in separate adjudications of the
condemnor=s and the property owner=s claims.  The history of section 25.1032(c), however,
evinces a continuing expansion of jurisdiction, permitting, but not requiring,
claims such as Taub=s claims to be tried in the Harris County Civil Courts at
Law, regardless of the amount in controversy.

As originally enacted in 1985, the predecessor of section
25.1032(c) provided: 

(a) The county civil courts at law of Harris County
have exclusive jurisdiction in Harris County of all matters of eminent domain,
regardless of the amount in controversy. . . . 

(b) The county civil courts at law of Harris County
may determine all issues, including any relating to title to real or personal
property, in eminent domain cases. 
Neither Article 1951 Revised Statutes, nor Section 21.002, Property
Code, affects or diminishes the jurisdiction of the county civil courts at law
of Harris County in eminent domain cases.

 








Act of May 9, 1985, 69th Leg., R.S., ch. 193, ' 2, 1985 Tex. Gen. Laws 776,
776.  Speaking in support of the
legislation, Representative David Patronella referred to the imbalance of cases
between the district courts and county civil courts at law in Harris County,
with the civil courts at law being in need of work while the district courts
were overburdened.  Hearings on Tex.
H.B. 1110 Before the House Comm. on Judicial Affairs, 69th Leg., R.S.
1.  Representative Patronella stated the
bill would allow Harris County to dispose of more cases more quickly without
adding additional courts.  Id.  The Honorable Ed Landry, then judge of Harris
County Civil Court at Law No. 1, specifically referred to the mandatory
transfer to district court previously required when title questions had to be
settled in eminent domain cases.  Id.
at 2.  The bill accordingly limited the
effect in Harris County of Property Code section 21.002, which requires
transfer to the district court when an eminent domain case “involves an issue
of title or any other matter that cannot be fully adjudicated in that court.”  Tex.
Prop. Code Ann. ' 21.002 (Vernon 1984). 
It also allowed the Harris County Civil Courts at Law to determine “all
issues . . . in eminent domain cases.” 
Act of May 9, 1985, 69th Leg., R.S., ch. 193, ' 2, 1985 Tex. Gen. Laws 776, 776.

In 1989, the legislature eliminated the language allowing the
Harris County Civil Courts at Law to determine “all issues” in eminent domain
proceedings.  Act of Feb. 22, 1989, 71st
Leg., R.S., ch. 2, ' 8.10, 1989 Tex. Gen. Laws 123, 140.  The change, however, was intended to be
nonsubstantive and to relocate a provision enacted by the previous legislature
relating to county civil courts at law in counties with a population of two
million or more.  See id.
at 123, 140 (referring to Act of July 16, 1987, 70th Leg., 1st C.S., ch. 26, ' 1, 1987 Tex. Gen. Laws 124,
124).

The seventy-first legislature subsequently amended section
25.1032(c).  Act of May 15, 1989,
71st Leg., R.S., ch. 445, ' 1, 1989 Tex. Gen. Laws 1605, 1606.  The purpose of the amendatory act, which also
gave the Harris County Civil Courts at Law jurisdiction over additional causes
of action, was to “raise the amount in controversy limit . . . and expand their
jurisdiction with respect to other causes of action.”  Tex.
Sen. Jurisprudence Comm., Bill Analysis, Tex. H.B. 1795, 71st Leg., R.S.
(1989).  The catalyst for the bill was,
once again, the backlog of cases in the Harris County District Courts and the
availability of an earlier trial setting in the county civil courts at
law.  Id.








In summary, the history of Texas Government Code section
25.1032(c) indicates an intent to direct more cases to the Harris County Civil
Courts at Law, thereby alleviating the backlog in the district courts.  Consistent with this intent, we conclude the
Harris County Civil Courts at Law have jurisdiction, but not exclusive
jurisdiction, over a landowner’s claims, regardless of the amount in
controversy, when those claims are inherently intertwined in an eminent domain
proceeding.  Thus, requiring all eminent
domain proceedings to be heard in the Harris County Civil Courts at Law need
not result in separate litigation of the condemnor’s and the property owner’s
claims.[10]  Finally, we observe, that, if Taub’s claims
had been only for inverse condemnation, seeking only condemnation damages,
rather than seeking both actual and exemplary damages in tort, the Harris
County Civil Court at Law would have had exclusive jurisdiction over
those claims.  See Tex. Gov=t Code Ann. ' 25.1032(c) (Vernon Supp. 2002)
(providing for exclusive jurisdiction over “eminent domain proceedings, both
statutory and inverse, regardless of the amount in controversy”).[11]

 








(3)  State v.
Landry.  In State v. Landry, this court stated,
“[T]he attempt of the legislature to vest exclusive jurisdiction of eminent
domain cases in the County Civil Court at Law in Harris County does not validly
deprive the district courts of their constitutionally established general trial
jurisdiction.”  793 S.W.2d 281, 284 (Tex.
App.CHouston [14th Dist.] 1990, orig.
proceeding).  The issue before the Landry
court was whether, in the county civil court at law, the State (relator in the
mandamus proceeding) was entitled to a jury determination of the reasonable and
necessary fees to which the property owners were entitled after the court
granted the State’s motion to dismiss the proceeding.  Id. at 282; see Tex. Prop. Code Ann. ' 21.019 (Vernon Supp. 2002).  The quoted statement appears in the context
of the Landry court’s interpretation of a provision in the Texas
Government Code describing the practice and procedure for juries in the
statutory county courts.  See Act
of April 30, 1987, 70th Leg., 1st R.S., ch. 148, ' 14.01, sec. 25.0007, 1987 Tex. Gen.
Laws 534, 613) (since amended, current version at Tex. Gov’t Code Ann. ' 25.0007 (Vernon Supp. 2002)).  Under that provision, the procedures pertaining
to the district court were to apply in matters over which the district and
statutory county courts had concurrent jurisdiction.  Id. 
The Landry court, however, ultimately decided the case on the
ground the State had waived a jury trial by not timely requesting a jury.  Landry, 793 S.W.2d at 285.  Thus, the quoted statement is dictum,
a conclusion reinforced by the Landry court=s observation on rehearing:

We have held that the parties in a dismissed
condemnation action brought in a county court at law should not be deprived of
the opportunity to have a jury hear the evidence on the disputed fact issue of
reasonable attorney fees and expenses. 
In our opinion, a party would be entitled to have a jury as fact finder
on this issue if the case were brought in district court in a county where
the district court and the county court at law share concurrent jurisdiction
over condemnation actions.  We do not
think the legislature intended to deprive a party of that right by limiting
condemnation actions to the exclusive jurisdiction of county courts at law in
certain counties.

 

Id. (on reh’g)
(emphasis added).








In addition, to support its initial suggestion that section
25.1032(c) was unconstitutional, the Landry court cited three cases
decided when article V, section 8 provided very specific grants of jurisdiction
to the district courts.  First, in Reasonover
v. Reasonover, the supreme court considered the certified question of
whether the legislature had the power, in the act establishing the Willacy
County Criminal District Court and the 103rd District Court of the same county,
to withhold from the latter court jurisdiction of “all causes for divorce
between husband and wife” and to confer exclusive jurisdiction of those causes
on the criminal district court in that county. 
58 S.W.2d 817, 818 (Tex. 1933). 
The supreme court concluded the legislature could not “take away from a
district court jurisdiction given it by the Constitution.”  Id. at 819.  When Reasonover was decided, article
V, section 8 specifically provided district courts had original jurisdiction “‘of
all cases of divorce.’”  Id. at
818 (quoting Tex. Const. art. V, ' 8 (amended 1891)).

Second, in Lord v. Clayton, the supreme court was
construing an act creating the criminal district court of Jefferson County and
giving it “original and exclusive jurisdiction over all criminal cases of the
grade of felony,” jurisdiction the district courts of Jefferson County already
had under the Texas Constitution and laws. 
352 S.W.2d 718, 720 (Tex. 1961) (orig. proceeding).  The supreme court concluded the other three
district courts of Jefferson County were regular or constitutional district
courts and that, to the extent the legislative acts being considered deprived
the other three courts of their constitutional criminal jurisdiction, those
acts were unconstitutional and void.  Id.
at 721B22. 
When Lord was decided, article V, section 8 specifically provided
district courts had original jurisdiction “of all criminal cases of the grade
of felony.”  Tex. Const. art. V, ' 8 (amended 1891).

Finally, in In re Cockrell, the Amarillo court was
considering legislation pertaining to counties having two or more district
courts and a juvenile board. 493 S.W.2d 620, 623 (Tex. Civ. App.CAmarillo 1973, writ ref’d
n.r.e.).  In such counties, the juvenile
board was to designate one of the district courts to be the juvenile court of
that county.  See id.  The Amarillo court concluded, “the
legislature is not empowered to restrict the constitutional original
jurisdiction and control of the district courts . . . over juveniles.”  Id. at 624.  When Cockrell was decided, article V,
section 8 specifically provided for district courts to have “original
jurisdiction and general control over . . . minors under such regulations as
may be prescribed by law,” a provision that had been construed to extend to
juveniles.  Id. (quoting Tex. Const. art. V, ' 8 (amended 1891) and citing Jones
v. Alexander, 59 S.W.2d 1080 (Tex. 1933)).








In contrast to the constitutional provision in existence when
the preceding cases were decided, the current version of article V, section 8,
quoted above, while more general in its grant of jurisdiction to the district
courts, also specifically envisions the enactment of laws conferring exclusive
jurisdiction on other courts.  The cases
cited by the Landry court, construing a constitutional provision no
longer in effect, do not support a claim that Texas Government Code section
25.1032(c) violates the current version of Texas Constitution article V,
section 8.

(4)  Procedural
issues.  Aquila finally argues (1) the county court’s
jurisdiction followed Aquila=s condemnation action with the transfer to the district court
and (2) Taub waived any objection to the district court’s jurisdiction.  In support of the first argument, Aquila
cites Federal Underwriters Exchange v. Pugh, 174 S.W.2d 598 (Tex. 1943),
and International & Great Northern Railway Co. v. Brisenio, 92 S. W.
998 (Tex. Civ. App.CSan Antonio 1906, writ ref=d). 
In Pugh, a worker=s compensation plaintiff filed his claim in the wrong court,
and a statute allowed a district court (which had jurisdiction over the subject
matter) where a claim was erroneously filed to transfer the claim to the
district court in the county where the injury occurred.  174 S.W.2d at 600.  Brisenio involved a wrongful death
action filed in two different district courts of the same county, with the
plaintiffs in the second-filed suit claiming the first suit was brought without
their knowledge.  After the plaintiffs in
the second suit brought an action in the first court to annul the judgment of
that court, the first court, pursuant to statute, ordered the annulment
proceeding transferred to the second court, and the appellate court concluded
that jurisdiction of the first court to try the suit to set aside its own
judgment followed the case to the second court. 
92 S.W. at 999.  Neither case
involved “exclusive” jurisdiction of the type involved in the case sub
judice.








In support of its waiver argument, Aquila cites Dubai
Petroleum Co. v. Kazi, 12 S.W.3d 71 (Tex. 2000).  In Dubai, the supreme court declined
to treat as jurisdictional the failure to meet statutory prerequisites for a
wrongful death suit.  Id. at
76.  Instead, the court held the
requirements affect a plaintiff’s “right under the statute to go forward with
this suit.” Id.  The court further
stated all claims are presumed to fall within the jurisdiction of the district
court unless the legislature has provided that they must be heard
elsewhere.  Id. at 75. Texas
Government Code section 25.1032(c) grants civil courts at law in Harris County
exclusive jurisdiction of eminent domain proceedings.  Thus, consistent with Dubai, we hold
the district court has jurisdiction over all claims brought below except Aquila’s
condemnation claim.

Dubai, however, does not support Aquila’s contention Taub waived
any objection to the district court’s jurisdiction over Aquila’s condemnation
counterclaim filed in that court. 
Subject matter jurisdiction cannot be conferred by consent, waiver, or
estoppel at any stage of a proceeding.  In
re Powers, 974 S.W.2d 867, 871 (Tex. App.CHouston [14th Dist.] 1998, no
pet.).  Moreover, a lack of subject
matter jurisdiction is fundamental error, which an appellate court must review
anytime it appears.  John R. Phenix,
6 S.W.3d at 290.  When the record
reflects lack of subject matter jurisdiction, it may be raised by the court if
not raised by the parties.  See Texas
Ass’n of Business, 852 S.W.2d at 446 n.10. 
Taub’s failure to object to the district court=s exercise of jurisdiction over
Aquila=s condemnation claim is of no moment.

The district court did not have jurisdiction over Aquila’s
condemnation counterclaim.  We therefore
vacate that part of the district court’s judgment granting Aquila an easement
over Taub’s property and awarding Taub condemnation damages.[12]




II.

The District Court’s Summary Judgment on Taub’s Claims

In issue two, Taub challenges the district court=s summary judgment that Taub take
nothing on his claims against Aquila.  The
purpose of summary judgment is to eliminate patently unmeritorious claims or
untenable defenses; it is not intended to deprive litigants of their right to a
full hearing on the merits of any real issue of fact.  Gulbenkian v. Penn, 151 Tex. 412, 416,
252 S.W.2d 929, 931 (1952).

A.  Standard of Review

The movant for summary judgment has the burden to show there
is no genuine issue of material fact and it is entitled to judgment as a matter
of law.  Nixon v. Mr. Property Mgmt.
Co., 690 S.W.2d 546, 548 (Tex. 1985). 
When deciding whether there is a disputed material fact issue precluding
summary judgment, the appellate court must take as true all evidence favorable
to the non-movant.  Id. at 548B49. 
The reviewing court must indulge every reasonable inference in favor of
the non-movant and resolve any doubts in its favor.  Id. at 549.

A defendant moving for traditional summary judgment assumes
the burden of showing as a matter of law the plaintiff has no cause of action
against him. Levesque v. Wilkens, 57 S.W.3d 499, 503 (Tex. App.CHouston [14th Dist.] 2001, no
pet.).  Traditional summary judgment for
a defendant is proper only when the defendant negates at least one element of
each of the plaintiff’s theories of recovery, or pleads and conclusively
establishes each element of an affirmative defense.  Science Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 911 (Tex. 1997).

Additionally, after sufficient time for discovery has passed,
a party may file a “no evidence” motion for summary judgment if there is no
evidence of one or more essential elements of a claim or defense on which an
adverse party would have the burden of proof at trial.  See Tex.
R. Civ. P. 166a(i).  As with the
traditional summary judgment, in reviewing a “no evidence” summary judgment, we
review the evidence in the light most favorable to the non-movant and disregard
all evidence and inferences to the contrary. 
Coastal Conduit & Ditching, Inc. v. Noram Energy Corp., 29
S.W.3d 282, 284 (Tex. App.CHouston [14th Dist.] 2000, no pet.).








Because the propriety of summary judgment is a question of
law, we review the trial court=s decision de novo. 
See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994).
 If, as here, the trial court grants
a motion for summary judgment without stating the grounds on which it relied,
we must affirm the summary judgment if any ground argued in the motion was
sufficient.  Star‑Telegram, Inc.
v. Doe, 915 S.W.2d 471, 473 (Tex. 1995); Blan v. Ali, 7 S.W.3d 741,
747B48 (Tex. App.CHouston [14th Dist.] 1999, no pet.).

B.  Taub’s Challenges
to Aquila’s Summary Judgment Motion in the District Court

Focusing only on Aquila’s second motion for summary judgment
in the district court, Taub argues it was a hybrid motion requesting both a
traditional summary judgment under Texas Rule of Civil Procedure 166a(b) and
(c) and a no-evidence summary judgment under Rule 166a(i).[13]  He additionally faults the motion for not
clearly delineating the traditional components from the no-evidence
components.  He asks this court to review
Aquila’s motion as we would a traditional summary judgment motion.  However, even viewing Aquila’s motion as a
traditional summary judgment motion, we conclude Aquila established, as a
matter of law, Taub could not recover on his trespass claims.

Aquila’s summary judgment motion was based in part on the
argument that Aquila’s condemnation of Taub’s interest in the land precluded
Taub’s action in trespass.[14]  Aquila argued Taub’s trespass claim was barred
as duplicative of Aquila’s condemnation action because the damages were the
same: reduction of the market value of Taub’s property interest.








In this court, as it did in its summary judgment motion,
Aquila relies on Glade v. Dietert, 295 S.W.2d 642 (Tex. 1956).  In Glade, the city=s contractor began construction of a
storm sewer on private property.  Id.
at 643.  The city later instituted
condemnation proceedings and deposited the condemnation award in the registry
of the court.  Id.  Subsequently, the landowners sued the
contractor for trespass.  Id.  The supreme court held that damages resulting
from a prior trespass on land could be recovered in a suit to condemn the land
on which the trespass occurred:

[T]he measure of damages is the same whether the issue
is tried by special commissioners, in the county court on appeal or in the
district court on cross‑action or by intervention.

 

While technically it may be said that the entry by the
contractor as the agent of the City constituted a separate cause of action
against the City, yet, under the circumstances in such a case as this, to
require the trial of two separate causes of action with double consumption of
time and expense, when all of the damage actually was occasioned on account of
the public improvement project and in pursuance thereto, would be a hardship on
all parties, as well as useless and unnecessary.

 

Id. at
646.  See also O=Neil Corp. v. Perry Gas Trans., Inc., 648 S.W.2d 335 (Tex. App.CAmarillo 1983, writ ref’d n.r.e.)
(concluding “the difference between the before‑ and the after‑taking
values provides full compensation to the landowner both for any diminution in
value caused by the trespass and for the taking itself, thereby eliminating the
need for a separate issue to determine trespass damages”).  Under Glade and O=Neil Corp., Aquila’s condemnation action
precludes Taub’s trespass claim as a matter of law.  

We overrule Taub=s issue two.[15]

III.  Costs

In issue three, Taub, citing Texas Civil Procedure Rule 131, argues the
trial court erred in assessing costs against him.[16]  He contends he was the “successful party”
because the trial court awarded him $1,386, and therefore, he should have
recovered costs under Rule 131.[17]  However, because we have vacated Taub’s
condemnation award, Aquila was the successful party on the only claims over
which the district court had jurisdiction. 
Taub may not recover costs.

We overrule Taub’s issue three.

CONCLUSION

We hold a county civil court at law in Harris County has
exclusive jurisdiction over Aquila=s eminent domain proceedings.  We further hold a county civil court at law
in Harris County has jurisdiction to hear trespass-related claims such as those
raised by Taub in the present case, regardless of the amount in controversy,
but its jurisdiction does not preclude the district court from hearing such
claims.








We therefore affirm the district court’s judgment to the
extent it incorporated the district court’s take nothing summary judgment in
favor of Aquila on Taub’s claims against Aquila (which technically were not “inverse
eminent domain” claims) and awarded costs against Taub.  We vacate that portion of the district court=s judgment granting Aquila its
easement and awarding Taub condemnation damages.  We order the district court to transfer
Aquila=s statutory eminent domain cause of
action back to the County Civil Court at Law No. 3, and we remand the
cause to the district court for this limited purpose.  The remainder of the judgment of the district
court is not affected by this court’s decision.

 

/s/        John S. Anderson

Justice

 

 

Judgment rendered
and Opinion filed October 17, 2002.

Panel consists of
Chief Justice Brister and Justices Anderson and Frost.

Publish C Tex.
R. App. P. 47.3(b).











[1]  Taub styled
his notice of appeal and his appellate briefs as against “Aquila
Southwest Pipeline Corporation, et al.”  Taub=s claims
against parties other than Aquila Southwest Pipeline, however, are not before
this court, and the judgment below remains intact with regard to those claims.





[2]  As discussed
below, Taub subsequently challenged this amount.  He was the only landowner to do so.





[3]  For the “count”
alleging wanton disregard of his rights, Taub prayed, in the alternative, for ‘an
amount of not less than $10,000 trebled to $30,000 per day for each and every
day the pipeline was on his property,” or “not more than 20% of the net worth
of the Aquila Pipeline.”





[4]  Aquila agreed
with Taub=s motion to consolidate, but argued the cases could be
consolidated only in the district court, not in the county civil court at law.





[5]  Because this
partial summary judgment granted Aquila condemnation of Taub’s interest in the
easement sought by Aquila, but left the issue of Taub’s condemnation damages
for trial, the judgment is interlocutory and not appealable.  See Lehmann v. Har-Con Corp., 39
S.W.3d 191, 192 (Tex. 2001) (holding in cases in which only one final and
appealable judgment can be rendered, a judgment issued without conventional
trial is final for purposes of appeal if and only if it actually disposes of
all claims and parties then before the court).





[6]  In his third
and final issue, Taub challenges the assessment of costs against him.





[7]  At oral
argument, the parties were requested to, and did, submit briefs on the issue of
the district court=s jurisdiction to conduct condemnation proceedings.





[8]  Exclusive
jurisdiction is the power a court exercises over an action or person to the
exclusion of all other courts.  See
Black=s Law Dictionary 564 (6th ed. 1990).





[9]  Similarly, the
general grant of authority to transfer cases found in Texas Government Code
74.121(b)(1), which requires the transferee court to have subject matter
jurisdiction, must yield to the specific grant of “exclusive jurisdiction” over
“eminent domain proceedings, both statutory and inverse,” found in Texas
Government Code section 25.1032(c).





[10]  When a
condemnor, proceeding in a county civil court at law, is sued in district court
on related claims, the condemnor may move to abate the district court
proceedings pending disposition of the eminent domain proceedings in the Harris
County Civil Court at Law.  Cf. Legend
Airlines, Inc. v. City of Fort Worth, 23 S.W.3d 83, 91 (Tex. App.CFort Worth 2000, pet. denied) (stating, when
administrative agency has primary jurisdiction over issues presented in case,
state courts generally abate or dismiss lawsuit pending the administrative
agency=s resolution of those issues). 





[11]  The 1989
legislation added “both statutory and inverse” after “eminent domain
proceedings.”  Act of May 15, 1989, 71st
Leg., R.S., ch. 445, ' 1, 1989 Tex. Gen. Laws 1605, 1606.  Use of “inverse” in connection with “eminent
domain” appears unique to this statute.  “An
‘inverse condemnation’ proceeding is the avenue of relief available when
property has been taken or damaged for public use without compensation or a
proper condemnation proceeding, and the property owner wishes to recover
compensation for his loss.”  Texas
Parks & Wildlife Dep’t v. Callaway, 971 S.W.2d 145, 148 (Tex. App.CAustin 1998, no pet.). 
The proceeding is denominated “inverse” because the property owner,
rather than the state or an entity with condemnation power, brings the
lawsuit.  See id.; see also
Trail Enter., Inc. v. City of Houston, 957 S.W.2d 625, 630 (Tex. App.CHouston [14th Dist.] 1997, pet. denied) (stating
inverse condemnation may occur when government physically appropriates or
invades property, or when it unreasonably interferes with landowner=s right to use and enjoy property, such as by
restricting access or denying permit for development).  Thus, although Texas Government Code section
25.1032(c) uses the term “inverse” in reference to “eminent domain proceedings,”
we conclude the section envisions actions for Ainverse
condemnation.@





[12]  We
do not address Taub=s issue one for
the reason stated in note 5, above.





[13]  The summary
judgment in the district court was in response to Aquila=s second and third motions for summary judgment.  Taub characterizes the third motion as not
addressing his claims against Aquila.  In
Aquila=s third motion, however, Aquila argued, in part, Taub
could present no evidence of damages in addition to condemnation damages.  Specifically, Aquila argued that after filing
its second motion (in which it argued Taub could not demonstrate any injuries
beyond those for which the condemnation action would compensate him), Aquila
had requested Taub disclose the amount and any method of calculating
damages.  Aquila represented Taub refused
to do so, and responded only that Aquila should refer to unspecified prior
pleadings and discovery.  This is clearly
a no-evidence argument.  The second
motion does not contain such a clear assertion of a no-evidence point in
relation to Taub=s general trespass claim.  As discussed in note 15 below, however, the
second motion does contain a clear assertion of a no-evidence point in relation
to Taub=s sign-trespass claim.





[14]  Aquila also
argued the easements from Taub=s co-tenants made Aquila a co-tenant, thus barring any
trespass claim.  Alternatively, Aquila
argued it had a valid license to enter the property.





[15]  In a three
sentence paragraph, Taub refers to his cause of action for “sign trespass” and
argues, because Aquila failed to show no trespass as a matter of law, Aquila
failed to defeat this statutory cause of action. In its second motion for
summary judgment, Aquila alleged, “Plaintiff has no evidence that Aquila did,
in fact, place a sign on his property, an essential element of his claim for
sign trespass.  Moreover, any such claim
would be barred as a matter of public policy.” 
Taub points to no place in the record where he produced such
evidence.  Other than a general citation
to “Chapter 80 of the Texas Civil Practice and Remedies Code,” Taub provides no
legal authority for this claim.  An issue
must be supported by argument and authorities to be properly before the court
on appeal.  Knoll v. Neblett, 966
S.W.2d 622, 639 (Tex. App.CHouston [14th Dist.] 1998, pet. denied).  Taub’s claim in this regard is not
sufficiently developed to warrant appellate review.





[16]  Rule 131
provides “The successful party to a suit shall recover of his adversary all
costs incurred therein, except where otherwise provided.”





[17]  The award was
for condemnation damages and it was less than Taub’s share of the $3,234.70
initially offered by the condemnor to all owners.  See Tex.
Prop. Code Ann. ' 21.047(a) (Vernon 2000) (providing in part, if court=s determination of damages is less than or equal to
amount condemnor offered before proceedings began, property owner shall pay
costs).  Nevertheless, these arguments
are moot based on our holding vacating the condemnation portion of the district
court’s judgment.