**B. F. CLARK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42236.**

Court of Criminal Appeals of Texas.

Sept. 22, 1969.

Rehearing Denied Dec. 3, 1969.

James H. Martin, Dallas, for appellant.

Henry Wade, Dist. Atty., Kerry P. Fitz-Gerald, Ronald W. Chapman, Malcolm Dade, Camille Elliott and James P. Finstrom, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

BELCHER, Judge.

The conviction is for felony theft; the punishment, two years.

The appellant contends that the evidence is insufficient to meet the requirements of the law of circumstantial evidence and does not support his conviction.

■    The testimony of the state reflects that the appellant, an employee of Braniff Airways from 11 p. m. to 7:30 a. m., was the only employee assigned to accepting and dispensing freight in the air freight facility. Thomas C. Batty, assistant manager, while accompanied by Mr. McDowell, Regional Director of Braniff, made a walk around inspection of the premises about 6:50 a. m., before the termination of Batty's shift. In making the inspection they saw an air craft cargo container which was consigned to Emery Freight Company. They noticed that a box in the container was partially open, and it appeared that some of the boxes inside the container were missing. When he looked through the windows of three automobiles parked ten to fifteen feet from the cargo container, Batty saw on the right front floorboard in one of the cars the bottom half of an Emery label on the end of a box which was almost covered by a gray piece of material. Batty reported his findings to McDowell, and then notified the police. When two officers arrived about 7:15 a. m., Batty and one of the officers located the appellant and asked him to accompany them to the three cars, where appellant identified the car which contained the box bearing the Emery label as belonging to him.

The witness Batty testified in part as follows:

"A  Well, I asked him if he would mind opening the car for us.

"Q  All right, sir.  And what did he do?

"A  He said that he wouldn't mind, and he reached in his pocket for his keys, and opened the door.

"Q  So he just took out his keys and opened the door?

"A  Right.

"Q  Did you force him to open the door?

"A  No.

"Q  You simply asked him would he mind opening the door?

"A  Yes.

"Q  Did he open the door?

"A  Yes, he opened it.

"Q  Did he keep it open?

"A  Momentarily.

"Q  And then what happened?

"A  As he started to close it, I asked him if he would mind getting the box out of the right front seat.

"Q  In other words, did he open it and then attempt to shut it, but did he get it fully closed?

"A  No, he didn't.

"Q  He opened it again?

"A  Yes.

"Q  And then, who got the box?

"A  Mr. Clark.

"Q  And what did he do with it?

"A  He held it out for us.

"Q  And then he gave it to you, sir?

"A  I  believe so.

"Q  Would this be the same box?

"A  Yes, this is the box.

"Q  All right, now, after that happened, after you got this box out of the car, what did you do then?

"A  Well, we were just standing waiting for the police officers to arrive, and I looked in the back of his car, that is through the back window of the convertible top.

"Q  You looked through a back window in the inside of the car?

"A  Right.

"Q  Did you see anything there?

"A  There was an odd shaped bundle behind the right seat, or behind the right and left seat, it being a small car, a MGB.

\*     \*     \*     \*     \*     \*

"Q  Well, after you saw this, sir, what did you do?

"A  We waited till Mr. Clark got there, and after he had removed the box from the front, right front floorboard, I asked if he would also identify what was behind the right front seat.

"Q  Did he do this, sir?

"A  Yes, he did.

"Q  And he took it out of the car?

"A  Yes, he did.

"Q  Do you know now what the box was?

"A  Yes, I do, it was a box that had belonged in the large box in the cocoon (cargo  container)."

The testimony further shows that the twenty transistor radios and one clock radio which had been taken from the cocoon (cargo container) were found in appellant's car, and they were of over the total value of fifty dollars; and that they were in the

custody and control of the witness Batty who testified that he did not give anyone his consent to take the radios from the cargo container.

The testimony of the appellant as to his duties and the area of his employment is substantially in accord with that of the state's witnesses. He further testified that he drove his car to work, parked it adjacent to the area where he worked, left it unlocked; and he did not know the radios were in his car.

The facts and circumstances in evidence are sufficient to warrant the conviction. The first and second grounds of error are overruled.

The appellant, in his third ground of error, contends that the search of his automobile was without his consent and without a warrant which rendered inadmissible the fruits of the search and its admission in evidence was reversible error.

The evidence reveals that after the appellant identified the automobile as belonging to him, Batty asked if he would mind opening the car. To which the appellant replied that he did not, and then opened the car and gave Batty the articles which were on the front and rear floorboard.

While testifying, the appellant did not complain of the search, but testified that the car was unlocked and he did not know the radios were in it. The third ground of error is overruled.

The admission of testimony referring to the appellant being late to work, to matters not relating to his general reputation for being a peaceable and law abiding citizen, and to a misdemeanor conviction not involving moral turpitude, is urged as the fourth ground of error.

The testimony complained of was admitted during the hearing on the issue of punishment which the appellant elected to submit to the court.

The misdemeanor conviction was for driving while intoxicated. No objections were made to the testimony that appellant had been sent home for violating safety regulations and that his attendance record was not good.

In light of the provisions of Art. 37.07, Sec. 3(a), Vernon's Ann.C.C.P., and the rule that the court only considered, unless otherwise shown, those matters admissible in evidence in assessing the punishment, no error is shown.

The judgment is affirmed.