**In the Matter of Ricky Dean COCKRELL,
a delinquent child.**

No. 8366.

Court of Civil Appeals of Texas,
Amarillo.

April 2, 1973.

Rehearing Denied April 30, 1973.

Garner, Boulter, Jesko & Purdom (Thomas J. Purdom), Lubbock, for appellant.

Alton R. Griffin, Dist. Atty. (Mary Bobbitt), Lubbock, for appellee.

REYNOLDS, Justice.

A juvenile, previously adjudicated to be a delinquent child and placed on conditional probation, has appealed from a judgment revoking that probation. Affirmed.

Initially, a petition charging that Ricky Dean Cockrell, a minor, was a delinquent child by reason of violation of Texas penal laws by possessing a narcotic drug, marijuana, and a dangerous drug, methamphetamine, was filed in the 72nd District Court of Lubbock County. That court, sitting as a juvenile court, conducted a hearing, found that the material allegations in the petition were true, adjudged the minor to be a delinquent child within the meaning of art. 2338–1,[1] referred to as the Texas Juvenile Act, and placed him on probation under certain conditions stated in the court's judgment. No appeal was taken from the judgment.

Less than six months later, an application to revoke the probation was filed in the same 72nd District Court. The application alleged a violation of the probation condition that the probationer shall commit no offense against the laws of the State of Texas in that he unlawfully possessed ". . . a narcotic drug, to-wit: marijuna (sic)" and ". . . a dangerous drug, to-wit: Amphetamines." The probationer filed a motion to suppress evidence of certain items of property seized by officers at a trailer house occupied by the probationer. The court commenced a hearing on the motion and, over the probationer's objection, continued the hearing on the court's own motion. The probationer then filed a plea in abatement, alleging the 72nd District Court was not a legally designated juvenile court and, therefore, was without jurisdiction of the minor under art. 2338–1.

Thereafter, the 72nd District Court, sitting as a juvenile court, overruled the plea in abatement, heard evidence on the motion to suppress and the application to revoke probation, overruled the motion to suppress and, at the conclusion of the hearing, entered judgment revoking probation on the findings that the probationer had violated a condition of his probation by possessing a narcotic drug, marijuana, and a dangerous drug, amphetamines. The minor was committed to the care, custody and control of the Texas Youth Council in accordance with the provisions of art. 5143d.[2] The propriety of the trial court's revocation judgment is assailed on twelve points of error.

The first three points attack the jurisdiction of the 72nd District Court to sit as a juvenile court in these proceedings. Parenthetically it is observed that Lubbock County is a county having four district courts and a juvenile board created and

---

1. All statutory article references are to the number under which the article appears in Vernon's Ann.Tex.Civ.St.

2. Bond pending appeal was denied by the trial judge and, on application, this court refused to disturb the discretionary denial. In The Matter of Ricky Dean Cockrell, a Delinquent Child, Docket No. 8355, Tex. Civ.App.—Amarillo December 5, 1972 (unreported).

operative under the provisions of art. 5139 et seq. In accordance with the provisions of art. 2338–1, § 4, the board entered an order designating the 99th District Court of Lubbock County as the juvenile court of Lubbock County. Subsequently, on February 5, 1970, the board entered another order decreeing, inter alia, that for the welfare of the children and the best interest of the public, each of the four named district judges is designated as a juvenile judge and each of the four named district courts is designated as a juvenile court for the purpose of hearing and trying juvenile delinquency matters or cases. The jurisdictional points are premised on the direction in section 4 of art. 2338–1 for the designation of juvenile courts which, as applicable to the Lubbock County situation, reads:

"Sec. 4. * * *

" . . . In counties having two or more district courts, . . . and having a juvenile board, such board *shall*[3] designate *one* of such district courts . . . , to be the juvenile court of such county, . . . ."

Appellant Cockrell submits that the mandatory language of art. 2338–1, § 4 prohibits the valid enactment of, and renders void, the February 5, 1970 order, leaving the 99th District Court as the only legally designated juvenile court, and consequently, the 72nd District Court had no jurisdiction over any of the juvenile proceedings pertaining to him. This is made manifest, Cockrell argues, by his recited history of the juvenile legislation. As enacted in 1943 by the 48th Legislature, art. 2338–1 provided that the juvenile board "*may* designate . . . *one or more* of the District Courts to be the Juvenile Court or Courts . . . ."[4] Afterwards, the 51st Legislature changed the word "may" to "shall" as it now appears in the act, and provided for

the designation of only *one* court as the juvenile court with the expressed legislative intention that the new designation shall be made in each county within ninety days.[5] Moreover, the same legislature enacted art. 2338–2 specifying that in counties having ten or more district courts and a juvenile board, the board " . . . shall designate one (1) of the District Courts to be the Juvenile Court of such county";[6] but this act was amended by the 56th Legislature to permit the board to designate *one or more* of the ten or more district courts as juvenile courts.[7] This amendment would not have been necessary, Cockrell reasons, if the juvenile board had existing authority to appoint more than one juvenile court in a county. Furthermore, the appellant points out that the Supreme Court, in holding art. 2338–1 constitutional in Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d 269 (1944), noted that the act gave exclusive original jurisdiction over proceedings governing any delinquent child to the juvenile court, a special court with special jurisdiction. Cockrell thereby concludes that as the situation exists in Lubbock County, the legislature obviously intended, and authorized, the juvenile board to appoint only *one* of the four district courts as the juvenile court; that the February 5, 1970 order purporting to designate all four of the district courts as juvenile courts is unauthorized and therefore void; that the last valid order of the board designated the 99th District Court as the only juvenile court; and that the 72nd District Court was without authorized jurisdiction to act as a juvenile court in the juvenile delinquency proceedings brought against Ricky Dean Cockrell.

It may be conceded readily that in entering the February 5, 1970 order, the juvenile board exceeded the statutory authority given, but that fact is not dispositive of the question of jurisdiction. Rather, the matter of jurisdiction has been constitutionally

---

3. All emphasis used throughout has been supplied.

4. Tex.Laws 1943, ch. 204, at 314.

5. Tex.Laws 1949, ch. 368, at 702.

6. Tex.Laws 1949, ch. 283, at 518.

7. Tex.Laws 1959, ch. 4, at 86.

624

prescribed adverse to appellant's contention.

■ Article 5 of the Texas Constitution, Vernon's Ann.St. embraces the constitutional provisions pertaining to the judiciary. Section 1 vests the judicial power of this state in enumerated courts among which is the district court. Section 8 describes the original and appellate jurisdiction of the district court and includes ". . . original jurisdiction and general control over . . . minors under such regulations as may be prescribed by law." This original jurisdiction and control extends to juveniles. Jones v. Alexander, 122 Tex. 328, 59 S.W.2d 1080 (1933). By amendment to section 1 in 1891, the legislature was authorized to establish such other courts deemed necessary, to ". . . prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district court and other inferior courts thereto." But it was not intended by the 1891 amendment to deprive the district courts of, or to detract from, the jurisdiction specifically granted them by the constitution; the legislative authority given to "conform the jurisdiction" was only authority to make the jurisdiction of the statutory courts concurrent with that of the constitutional district court, and was not authority to either destroy the district court's constitutional jurisdiction or to transfer any part of it exclusively to a statutory court. Reasonover v. Reasonover, 122 Tex. 512, 58 S.W.2d 817 (1933).

■■ It follows that the legislature is not empowered to restrict the constitutional original jurisdiction and control of the district courts, including the 72nd District Court, over juveniles, and in enacting the statutes pertaining to juveniles, the legislature cannot be reasonably charged with any intent of constitutional jurisdictional restriction. The provision in section 5(a) of art. 2338–1 vesting exclusive original jurisdiction of juvenile proceedings in the juvenile court must be considered in light of

the entire act. So considered, the conclusion is inescapable that the statute, through the announced liberal construction of its provisions, strives for specialized, as opposed to jurisdictional, treatment of juveniles.

■ Art. 2338–1 does not create a separate juvenile court to replace existing constitutional courts; on the contrary, section 4 specifies that the county court or any district court may be designated a juvenile court, and declares "The jurisdiction, powers, and duties thus conferred upon the established courts hereunder are super-added jurisdictions, powers, and duties; it being the intention of the Legislature not to create hereby any additional offices." In conformity with this declaration, the legislature expressed in the same section its intent and concern that the court designated as a juvenile court be ". . . presided over by a judge who has a sympathetic understanding of the problems of child welfare. . . ." In brief, the legislature, in providing statutorily for a juvenile court designation, seeks to utilize, within the framework of the constitutional judiciary, the expertise of jurists knowledgeable and skillful in juvenile matters in order to achieve the expressed purpose of protecting the best welfare of the juvenile and the state. The jurisdictional question raised here was not an issue in Dendy v. Wilson, supra, and the holding here that the district court is a constitutional juvenile court is not regarded as conflicting with the pronouncements in *Dendy* concerning the constitutionality of the juvenile act.

■ No contention has been made that the presiding judge of the 72nd District Court lacks the qualities statutorily expressed to be desirable in a juvenile jurist, and the jurisdictional attack is not in that direction. Moreover, it cannot be doubted that as a practical matter this cause could have been filed in the 99th District Court and, under the exchange and transfer au-

thority given in Rule 330,[8] heard by the judge of the 72nd District Court with the identical result reached. Accordingly, the first three points of error are overruled.

■ The twelfth point assigns as reversible error the action of the trial court in continuing, on its own motion and over the objection of the appellant, the hearing on the motion to suppress evidence. The continuance was ordered during the direct examination of the first witness. It is contended that such continuance violated Rule 251, which prohibits any continuance except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law, and was harmful because the continuance deprived the juvenile of the opportunity of cross-examination and to present evidence. The proceedings were not in the nature of a conventional trial to which Rule 251 is made applicable, but the procedure was conducted under the directions applicable to juveniles. Section 13 of art. 2338–1 provides that the hearing shall be in an informal manner and that the judge may adjourn the hearing from time to time. Furthermore, at the last hearing the court announced that the court would, and the court did, start the former hearing over. At this last hearing, the juvenile cross-examined the witnesses and presented evidence. Under its authority, the court did not err in continuing the hearing on the motion to suppress; but, at most, the asserted error would be harmless. Rule 434. The last point is overruled.

■ In points four and five error is advanced on the part of the trial court in admitting evidence of, and finding that the juvenile possessed, marijuana over the objection that the pleading alleging possession of ". . . a narcotic drug, to-wit: *marijuana*," constituted no supporting pleading. It is argued that since "marijuana" and "marijuna" are not idem sonams the proof fails to correspond to the pleading, and the fatal variance is insufficient to sustain a finding of probation violation.

The correct pronounciation of "marijuna" is, of course, debatable and, depending upon the pronunciation given, "marijuna" may or may not sound sufficiently like "marijuana" so that the two may or may not be idem sonams. Nevertheless, it is not necessary to decide the issue of idem sonams, for it seems plain that the misspelled word "marijuna" in the revocation application was a typographical error caused by the inadvertent omission of the letter "a." Unless the misspelling prejudicially misleads one in preparing his defense, the law does not consider as fatal a misspelling through the use of an incorrect letter, Garza v. State, 87 Tex.Cr.R. 537, 222 S.W. 1105 (1920) ("pistel" instead of pistol), or through letter transposition, Lute v. State, 166 Tex.Cr.R. 357, 314 S.W.2d 98 (1958) ("Herion" instead of heroin), or, as here, through a letter omission, Murphey v. State, 109 Tex.Cr.R. 524, 5 S.W.2d 988 (1928) ("intoication" instead of intoxication). Here, the juvenile did not claim and has not claimed surprise, or any prejudice or any mistaken meaning arising from the misspelled word. The points are overruled.

Points nine and ten claim trial court error in overruling the motion to suppress and in admitting evidence obtained by an illegal search and seizure. The eleventh point assigns error in the failure to establish the chain of custody of the evidence. The sixth, seventh and eighth points are that the evidence is insufficient to support a finding of violation of probation. These points require resort to the evidence heard by the juvenile judge; and, although some variation in the statements and in the acts testified about are revealed by the direct and cross-examination, the record supports the following recitation.

While on patrol at about 1:30 a.m., Deputy Sheriffs Casey and Sabell approached a car parked on a highway and occupied by two people. In talking with the occupants, it was learned that the driver had gone

---

8. Rule references are to the Texas Rules of Civil Procedure.

across the street to a trailer house later established to be owned and occupied by appellant Cockrell. During the conversation, Deputy Sabell saw some marijuana on the car floorboard. Captain Douglas, also a deputy sheriff, was called and when he arrived, a search made of the car revealed marijuana and a package containing amphetamines. The deputies saw two boys moving toward the trailer house and, on the chance that one might be the driver of the car, the deputies called to the boys and approached the trailer house. The boys did not respond to the call, and had entered the trailer house when officers Douglas and Casey arrived there.

Captain Douglas knocked and after some three minutes appellant Cockrell opened the door. Captain Douglas identified himself and officer Casey and asked for and received permission to enter. Captain Douglas asked who was in the trailer and Cockrell named three persons. Captain Douglas stated that he asked Cockrell if he would give the officers consent to search his trailer and Cockrell gave consent. In testifying in connection with the motion to suppress evidence, Cockrell stated that Captain Douglas asked, "Do I have your permission to search the house?", to which Cockrell replied, "Yes, sir." Cockrell further testified that he did not know he had a right to refuse the search, but that he was not afraid, and that he was not threatened or coerced in any manner.

The trailer house was searched by the officers accompanied by Cockrell, who made no objection. The two boys who were seen entering the house, and another boy, together with Cockrell, his wife and their daughter were in the house. Two and possibly all three of the boys were in the east bedroom on the floor of which marijuana was found. In the bathroom adjacent to this bedroom the officers found marijuana in a wastebasket, and in the commode there was found amphetamines similar to that found earlier in the car. In another bedroom, occupied then by Mrs. Cockrell and the daughter, were boxes containing amphetamines given to Mrs. Cockrell, so she and the appellant testified without contradictory testimony, by a doctor. At this point the officers made arrests.

The drugs were taken by Captain Douglas to the sheriff's office, placed in packets and marked, and given to Deputy Casey, who locked the packets in the property room. Later that morning Deputy Casey secured the packets from the property room, and packed and sent them by certified mail to the Department of Public Safety laboratory in Austin. The articles were returned by mail and identified by Captain Douglas as being the same articles taken from the trailer house and submitted to the laboratory. The laboratory report, showing submission by Deputy Casey of marijuana and amphetamines, among other items, was received in evidence and its authenticity was stipulated.

It is the appellant's position that these facts do not show fair and convincing proof that consent to search was freely and voluntarily given, that the evidence was not accounted for on a number of days, and that the evidence does not exclude every other reasonable hypothesis except that of the juvenile's guilt because of the strong probability that the drugs were possessed by others present when the drugs were seized.

Juvenile matters are civil in nature and, so far as practicable, are governed by rules relating to civil procedure. Brenan v. Court of Civil Appeals, Fourteenth District, 444 S.W.2d 290 (Tex. 1968). No findings of fact or conclusions of law were requested to be, or were, filed, and the controlling issue is whether the record shows the trial court abused its discretion in finding a violation of a condition of, and in revoking the, probation. In re Seay, 487 S.W.2d 770 (Tex.Civ.App.—Amarillo 1972, no writ); In re Hoskins, 198 S.W.2d 460 (Tex.Civ.App.—Amarillo 1946, writ ref'd n. r. e.). The record has been reviewed in awareness of the public concern for, and the legal safeguards de-

signed to protect, the juvenile. The record contains sufficient evidence, on the basis of previous judicial interpretation, to support the implied findings that the search was legal through consent freely and voluntarily given without objection, Clark v. State, 447 S.W.2d 168 (Tex.Cr.App.1969); that the chain of custody of the evidence was satisfactorily established, Andrews v. State, 436 S.W.2d 546 (Tex.Cr.App.1968); and that the juvenile appellant possessed the drugs in violation of his conditional probation, particularly since possession does not have to be exclusive to constitute a violation. Yantis v. State, 476 S.W.2d 24 (Tex.Cr.App.1972); Ellis v. State, 456 S.W.2d 398 (Tex.Cr.App.1970). Therefore, the trial court did not abuse its discretionary power in revoking the probation. Points six through eleven, inclusive, are overruled.

The trial court's judgment is affirmed.