Henry J.N. TAUB, Appellant,

v.

AQUILA SOUTHWEST PIPELINE
CORPORATION, Appellee.

No. 14–01–00355–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 17, 2002.

Rehearing Overruled Jan. 16, 2003.

452

J. Marcus Hill, William E. Ryan, Houston, for appellants.

Reagan Douglas Pratt, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices ANDERSON and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

The issue in this case is the scope of the legislature's grant of exclusive jurisdiction over eminent domain proceedings to the county civil courts at law in Harris County.

Appellant Henry J.N. Taub appeals a final judgment in a consolidated condemnation and trespass case. Rendered after two partial summary judgments and a jury trial, the judgment (1) awarded appellee Aquila Southwest Pipeline Corporation a permanent easement and right of way for a natural gas pipeline on Taub's property; (2) awarded Taub $1,386 in condemnation damages, based on the jury's findings; and (3) assessed costs against Taub. Concluding, as a matter of first impression, the district court did not have jurisdiction over Aquila's condemnation action against Taub, we vacate that portion of the district court's judgment granting Aquila its easement and awarding Taub condemnation damages. We affirm the district court's judgment to the extent it incorporated its

own earlier take nothing summary judgment in favor of Aquila on Taub's claims against Aquila.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Taub is the owner of a 70–percent undivided interest in a 53–acre tract of land, lying partly in Waller County and partly in Harris County. The remaining 30–percent undivided interest is owned by two trusts and three individuals. Aquila is a publicly regulated gas utility, holding a Texas Railroad Commission permit to operate gas pipelines in Texas.

In April 1995, in the Harris County Civil Court at Law, Aquila filed a petition in condemnation against Taub and the co-owners of the 53–acre tract, seeking to condemn a 50–foot wide natural gas pipeline easement. On April 19, 1995, the county civil court at law appointed special commissioners, who set a hearing for May 18, 1995. Two of Taub's co-owners received notice of the hearing; Taub did not. At the May 18 hearing, the commissioners assessed damages to the landowners, as their interests appear, in the total amount of $2,741.[2] Aquila deposited that amount into the registry of the court. The commissioners also signed a notice to Taub of a hearing to be held November 27, 1995.

Around May 25, 1995, Aquila's construction crew first entered the property. The crew completed construction around June 26, and the pipeline began operating August 11, 1995.

On October 20, 1995, Taub was served with notice of the November 27 commissioners' meeting. Taub, however, was granted a continuance to January 4, 1996.

In the meantime, Taub sued Aquila in district court, asserting common law trespass, unauthorized placement of signs, conversion of topsoil, and wanton disregard of Taub's rights. He sought general, special, exemplary, and punitive damages.[3] He also sought a temporary restraining order, a temporary injunction, a permanent injunction, and, in the alternative, a declaratory judgment. Aquila counterclaimed for condemnation in that action, seeking the same easement it sought in the county civil court at law.

On January 4, 1996, the commissioners met to hear Taub's evidence. They again assessed damages to the landowners, as their interests appear, in the total amount of $2,741. Taub objected to the commissioners' award on several grounds, including inadequate damages.

Aquila subsequently moved for partial summary judgment in the county civil court at law. The county civil court at law granted Aquila's partial summary judgment motion, ordering that Aquila had conclusively established the right to condemn Taub's property for a pipeline easement. Both parties agreed to consolidate in the district court the cases then pending in the two different courts, and the county

1. Taub styled his notice of appeal and his appellate briefs as against "Aquila Southwest Pipeline Corporation, et al." Taub's claims against parties other than Aquila Southwest Pipeline, however, are not before this court, and the judgment below remains intact with regard to those claims.

2. As discussed below, Taub subsequently challenged this amount. He was the only landowner to do so.

3. For the "count" alleging wanton disregard of his rights, Taub prayed, in the alternative, for "an amount of not less than $10,000 trebled to $30,000 per day for each and every day the pipeline was on his property," or "not more than 20% of the net worth of the Aquila Pipeline."

civil court at law transferred its case to the district court, where Taub's trespass action and Aquila's condemnation counterclaim were still pending.[4]

Aquila also filed motions for summary judgment in the district court. The district court granted Aquila's motions, ordering that Taub take nothing on his claims against Aquila and leaving only Aquila's condemnation counterclaim against Taub's 70–percent interest in the easement to be tried. The district court submitted the condemnation case to a jury solely on the questions of the market value of the permanent easement, damages to the remainder, and fair market rental value of the temporary workspace easement. The jury found a fair market value of $1,320 for the permanent easement, no damages to the remainder, and fair market rental value of $660. The trial court rendered a final judgment on December 22, 2000, awarding Aquila the requested easement, permitting Taub to withdraw $1,386 plus interest from the amount Aquila had deposited into the court's registry, and ordering costs assessed against Taub and in favor of Aquila.

## DISCUSSION

 In three issues, Taub challenges two summary judgments rendered in favor of Aquila: (1) the first summary judgment rendered by the county civil court at law granting the motion for partial summary judgment filed by Aquila as plaintiff in the condemnation action, and (2) the second summary judgment rendered by the district court granting motions filed by Aquila as defendant in the trespass action. The first summary judgment condemned Taub's interest in the easement Aquila sought, and left only the amount of Taub's damages to be determined.[5] The second summary judgment ordered Taub take nothing on his claims against Aquila. The final judgment, rendered by the district court, granted Aquila its easement, awarded Taub the condemnation damages found by the jury, and assessed costs against Taub and in favor of Aquila.[6] The judgment concluded: "This is a final judgment, intended to resolve all claims remaining after the previous partial judgments rendered in these actions. All relief not granted herein, or in a prior partial judgment entered in these actions, is denied."

## I.

### Jurisdictional Issue

#### A. Sua Sponte Review

 Neither party in the initial briefs challenged the jurisdiction of the district court to hear Aquila's condemnation case.[7] Nevertheless, a trial court has no discretion to entertain a suit absent subject matter jurisdiction. *State v. John R. Phenix & Assocs., Inc.*, 6 S.W.3d 288, 290 (Tex. App.-Houston [14th Dist.] 1998, no pet.)

---

4. Aquila agreed with Taub's motion to consolidate, but argued the cases could be consolidated only in the district court, not in the county civil court at law.

5. Because this partial summary judgment granted Aquila condemnation of Taub's interest in the easement sought by Aquila, but left the issue of Taub's condemnation damages for trial, the judgment is interlocutory and not appealable. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 192 (Tex.2001) (holding in cases in which only one final and appealable judgment can be rendered, a judgment issued without conventional trial is final for purposes of appeal if and only if it actually disposes of all claims and parties then before the court).

6. In his third and final issue, Taub challenges the assessment of costs against him.

7. At oral argument, the parties were requested to, and did, submit briefs on the issue of the district court's jurisdiction to conduct condemnation proceedings.

(citing *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Absence of subject matter jurisdiction is fundamental error, which an appellate court must review at any time it appears. *John R. Phenix*, 6 S.W.3d at 290. When lack of subject matter jurisdiction is apparent from the record, it may be raised by the court if not raised by the parties. *See Texas Ass'n. of Business*, 852 S.W.2d at 446 n. 10. An appellate court's jurisdiction over the merits of a case extends no further than that of the court from which the appeal is taken. *George v. Phillips Petroleum Co.*, 976 S.W.2d 363, 364–65 (Tex.App.-Houston [14th Dist.] 1998, no pet.). Given the exclusive jurisdiction over eminent domain proceedings specifically granted to the civil courts at law in Harris County, we conclude, in what appears to be a case of first impression, the district court lacked subject matter jurisdiction of Aquila's condemnation counterclaims.

### B. Jurisdictional Provisions

■ **(1) The Texas constitutional provision.** We begin with the grant of jurisdiction to the district courts, as found in the Texas Constitution: "District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, *except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body.*" TEX. CONST. art. V, § 8 (emphasis added). Thus, the constitution specifically envisions the enactment of laws conferring exclusive jurisdiction over actions, proceedings, and remedies on courts other than district courts.

**(2) Exclusive jurisdiction over "eminent domain proceedings, both statutory and inverse."** Texas Government Code section 25.1032(c) provides in relevant part: "A county civil court at law has exclusive jurisdiction in Harris County of eminent domain proceedings, both statutory and inverse, regardless of the amount in controversy." TEX. GOV'T CODE ANN. § 25.1032(c) (Vernon Supp.2002).[8] "Eminent domain" refers to "[t]he power to take private property for public use by the state, municipalities, and private persons or corporations authorized to exercise functions of state power." BLACK'S LAW DICTIONARY 523 (6th ed.1990); see also *Ft. Worth & D.C. Ry. Co. v. Ammons*, 215 S.W.2d 407, 409 (Tex.Civ.App.-Amarillo 1948, writ ref'd n.r.e.) (stating eminent domain is right of the state, or of. those to whom power has been delegated, to condemn private property for public use, and to take ownership and possession of property on paying owner due compensation). "The process of exercising the power of eminent domain is commonly referred to as 'condemnation' or 'expropriation.'" BLACK'S LAW DICTIONARY 523 (6th ed.1990); see also *A.C. Aukerman Co. v. State*, 902 S.W.2d 576, 577 (Tex.App.-Houston [1st Dist.] 1995, writ denied) (stating condemnation is procedure by which a sovereign state exercises its right to take private property for public use, without consent, but on payment of just compensation). Under Texas Government Code section 25.1032(c), the Harris County Civil Court at Law had exclusive jurisdiction over Aquila's condemnation action.

### C. Aquila's Contentions Supporting Jurisdiction in the District Court

■ **(1) Specific versus general provisions.** Aquila, however, directs this

---

**8.** Exclusive jurisdiction is the power a court exercises over an action or person to the exclusion of all other courts. *See* BLACK'S LAW DICTIONARY 564 (6th ed.1990).

court's attention to Property Code sections 21.001 and 21.003. Section 21.001 provides in part: "District courts and county courts at law have concurrent jurisdiction in eminent domain cases." TEX. PROP.CODE ANN. § 21.001 (Vernon 1984). Section 21.003 provides:

A district court may determine all issues, including the authority to condemn property and the assessment of damages, in any suit:

(1) in which this state, a political subdivision of this state, a person, an association of persons, or a corporation is a party; and

(2) that involves a claim for property or for damages to property occupied by the party under the party's eminent domain authority or for an injunction to prevent the party from entering or using the property under the party's eminent domain authority.

TEX. PROP.CODE ANN. § 21.003 (Vernon 1984). Both statutes predate the statute granting exclusive eminent domain jurisdiction to Harris County Civil Courts at Law.

■ "[A] specific act is properly regarded as an exception to, or qualification of, a general law on the same subject previously enacted. In such a case both statutes are permitted to stand, the general one being applicable to all cases except the particular one embraced in the specific act." *Sam Bassett Lumber Co. v. City of Houston*, 145 Tex. 492, 198 S.W.2d 879, 881 (1947); *see Scurlock Permian Corp. v. Brazos County*, 869 S.W.2d 478, 486 (Tex. App.-Houston [1st Dist.] 1993, writ denied) (citing *Sam Bassett* for proposition that special or specific act is properly regarded as exception to, or qualification of, general

law on same subject previously enacted); *see also Davis v. Covert*, 983 S.W.2d 301, 302–03 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.) (en banc) (applying rule that, when two statutes conflict, specific controls over general). The general grant of concurrent jurisdiction in Property Code section 21.001 and the general grant of ancillary jurisdiction in Property Code section 21.003 must yield to the specific grant of "exclusive jurisdiction" over "eminent domain proceedings, both statutory and inverse," found in Texas Government Code section 25.1032(c).[9]

■ **(2) Separate adjudication of issues.** Aquila also argues requiring all condemnation actions to be heard in the Harris County Civil Courts at Law will result in separate adjudications of the condemnor's and the property owner's claims. The history of section 25.1032(c), however, evinces a continuing expansion of jurisdiction, permitting, but not requiring, claims such as Taub's claims to be tried in the Harris County Civil Courts at Law, regardless of the amount in controversy.

As originally enacted in 1985, the predecessor of section 25.1032(c) provided:

(a) The county civil courts at law of Harris County have exclusive jurisdiction in Harris County of all matters of eminent domain, regardless of the amount in controversy....

(b) The county civil courts at law of Harris County may determine all issues, including any relating to title to real or personal property, in eminent domain cases. Neither Article 1951 Revised Statutes, nor Section 21.002, Property Code, affects or diminishes the jurisdic-

---

9. Similarly, the general grant of authority to transfer cases found in Texas Government Code 74.121(b)(1), which requires the transferee court to have subject matter jurisdiction, must yield to the specific grant of "exclusive jurisdiction" over "eminent domain proceedings, both statutory and inverse," found in Texas Government Code section 25.1032(c).

tion of the county civil courts at law of Harris County in eminent domain cases. Act of May 9, 1985, 69th Leg., R.S., ch. 193, § 2, 1985 Tex. Gen. Laws 776, 776. Speaking in support of the legislation, Representative David Patronella referred to the imbalance of cases between the district courts and county civil courts at law in Harris County, with the civil courts at law being in need of work while the district courts were overburdened. *Hearings on Tex. H.B. 1110 Before the House Comm. on Judicial Affairs*, 69th Leg., R.S. 1. Representative Patronella stated the bill would allow Harris County to dispose of more cases more quickly without adding additional courts. *Id.* The Honorable Ed Landry, then judge of Harris County Civil Court at Law No. 1, specifically referred to the mandatory transfer to district court previously required when title questions had to be settled in eminent domain cases. *Id.* at 2. The bill accordingly limited the effect in Harris County of Property Code section 21.002, which requires transfer to the district court when an eminent domain case "involves an issue of title or any other matter that cannot be fully adjudicated in that court." TEX. PROP. CODE ANN. § 21.002 (Vernon 1984). It also allowed the Harris County Civil Courts at Law to determine "all issues ... in eminent domain cases." Act of May 9, 1985, 69th Leg., R.S., ch. 193, § 2, 1985 Tex. Gen. Laws 776, 776.

In 1989, the legislature eliminated the language allowing the Harris County Civil Courts at Law to determine "all issues" in eminent domain proceedings. Act of Feb. 22, 1989, 71st Leg., R.S., ch. 2, § 8.10, 1989 Tex. Gen. Laws 123, 140. The change, however, was intended to be nonsubstan-

tive and to relocate a provision enacted by the previous legislature relating to county civil courts at law in counties with a population of two million or more. *See id.* at 123, 140 (referring to Act of July 16, 1987, 70th Leg., 1st C.S., ch. 26, § 1, 1987 Tex. Gen. Laws 124, 124).

The seventy-first legislature subsequently amended section 25.1032(c). Act of May 15, 1989, 71st Leg., R.S., ch. 445, § 1, 1989 Tex. Gen. Laws 1605, 1606. The purpose of the amendatory act, which also gave the Harris County Civil Courts at Law jurisdiction over additional causes of action, was to "raise the amount in controversy limit ... and expand their jurisdiction with respect to other causes of action." TEX. SEN. JURISPRUDENCE COMM., BILL ANALYSIS, Tex. H.B. 1795, 71st Leg., R.S. (1989). The catalyst for the bill was, once again, the backlog of cases in the Harris County District Courts and the availability of an earlier trial setting in the county civil courts at law. *Id.*

In summary, the history of Texas Government Code section 25.1032(c) indicates an intent to direct more cases to the Harris County Civil Courts at Law, thereby alleviating the backlog in the district courts. Consistent with this intent, we conclude the Harris County Civil Courts at Law have jurisdiction, but not exclusive jurisdiction, over a landowner's claims, regardless of the amount in controversy, when those claims are inherently intertwined in an eminent domain proceeding. Thus, requiring all eminent domain proceedings to be heard in the Harris County Civil Courts at Law need not result in separate litigation of the condemnor's and the property owner's claims.[10]

---

10. When a condemnor, proceeding in a county civil court at law, is sued in district court on related claims, the condemnor may move to abate the district court proceedings pend-

ing disposition of the eminent domain proceedings in the Harris County Civil Court at Law. *Cf. Legend Airlines, Inc. v. City of Fort Worth*, 23 S.W.3d 83, 91 (Tex.App.-Fort

Finally, we observe, that, if Taub's claims had been only for inverse condemnation, seeking only condemnation damages, rather than seeking both actual and exemplary damages in tort, the Harris County Civil Court at Law would have had **exclusive** jurisdiction over those claims. *See* Tex. Gov't Code Ann. § 25.1032(c) (Vernon Supp.2002) (providing for exclusive jurisdiction over "eminent domain proceedings, both statutory and inverse, regardless of the amount in controversy").[11]

■ (3) *State v. Landry.* In *State v. Landry,* this court stated, "[T]he attempt of the legislature to vest exclusive jurisdiction of eminent domain cases in the County Civil Court at Law in Harris County does not validly deprive the district courts of their constitutionally established general trial jurisdiction." 793 S.W.2d 281, 284 (Tex.App.-Houston [14th Dist.] 1990, orig. proceeding). The issue before the *Landry* court was whether, in the county civil court at law, the State (relator in the mandamus proceeding) was entitled to a jury determination of the reasonable and necessary fees to which the property owners were entitled after the court granted the State's motion to dismiss the proceeding. *Id.* at 282; *see* Tex. Prop.Code Ann.

§ 21.019 (Vernon Supp.2002). The quoted statement appears in the context of the *Landry* court's interpretation of a provision in the Texas Government Code describing the practice and procedure for juries in the statutory county courts. *See* Act of April 30, 1987, 70th Leg., 1st R.S., ch. 148, § 14.01, sec. 25.0007, 1987 Tex. Gen. Laws 534, 613 (since amended, current version at Tex. Gov't Code Ann. § 25.0007 (Vernon Supp.2002)). Under that provision, the procedures pertaining to the district court were to apply in matters over which the district and statutory county courts had concurrent jurisdiction. *Id.* The *Landry* court, however, ultimately decided the case on the ground the State had waived a jury trial by not timely requesting a jury. *Landry,* 793 S.W.2d at 285. Thus, the quoted statement is *dictum,* a conclusion reinforced by the *Landry* court's observation on rehearing:

> We have held that the parties in a dismissed condemnation action brought in a county court at law should not be deprived of the opportunity to have a jury hear the evidence on the disputed fact issue of reasonable attorney fees and expenses. In our opinion, a party would be entitled to have a jury as fact finder

Worth 2000, pet. denied) (stating, when administrative agency has primary jurisdiction over issues presented in case, state courts generally abate or dismiss lawsuit pending the administrative agency's resolution of those issues).

**11.** The 1989 legislation added "both statutory and inverse" after "eminent domain proceedings." Act of May 15, 1989, 71st Leg., R.S., ch. 445, § 1, 1989 Tex. Gen. Laws 1605, 1606. Use of "inverse" in connection with "eminent domain" appears unique to this statute. "An 'inverse condemnation' proceeding is the avenue of relief available when property has been taken or damaged for public use without compensation or a proper condemnation proceeding, and the property owner wishes to recover compensation for his loss." *Texas Parks & Wildlife Dep't v. Calla-*

*way,* 971 S.W.2d 145, 148 (Tex.App.-Austin 1998, no pet.). The proceeding is denominated "inverse" because the property owner, rather than the state or an entity with condemnation power, brings the lawsuit. *See id.; see also Trail Enter., Inc. v. City of Houston,* 957 S.W.2d 625, 630 (Tex.App.-Houston [14th Dist.] 1997, pet. denied) (stating inverse condemnation may occur when government physically appropriates or invades property, or when it unreasonably interferes with landowner's right to use and enjoy property, such as by restricting access or denying permit for development). Thus, although Texas Government Code section 25.1032(c) uses the term "inverse" in reference to "eminent domain proceedings," we conclude the section envisions actions for "inverse condemnation."

on this issue *if the case were brought in district court in a county where the district court and the county court at law share concurrent jurisdiction over condemnation actions.* We do not think the legislature intended to deprive a party of that right by limiting condemnation actions to the exclusive jurisdiction of county courts at law in certain counties.

*Id.* (on reh'g) (emphasis added).

In addition, to support its initial suggestion that section 25.1032(c) was unconstitutional, the *Landry* court cited three cases decided when article V, section 8 provided very specific grants of jurisdiction to the district courts. First, in *Reasonover v. Reasonover*, the supreme court considered the certified question of whether the legislature had the power, in the act establishing the Willacy County Criminal District Court and the 103rd District Court of the same county, to withhold from the latter court jurisdiction of "all causes for divorce between husband and wife" and to confer exclusive jurisdiction of those causes on the criminal district court in that county. 122 Tex. 512, 58 S.W.2d 817, 818 (1933). The supreme court concluded the legislature could not "take away from a district court jurisdiction given it by the Constitution." *Id.* at 819. When *Reasonover* was decided, article V, section 8 specifically provided district courts had original jurisdiction " 'of all cases of divorce.' " *Id.* at 818 (quoting TEX. CONST. art. V, § 8 (amended 1891)).

Second, in *Lord v. Clayton*, the supreme court was construing an act creating the criminal district court of Jefferson County and giving it "original and exclusive jurisdiction over all criminal cases of the grade of felony," jurisdiction the district courts of Jefferson County already had under the Texas Constitution and laws. 163 Tex. 62, 352 S.W.2d 718, 720 (1961) (orig.proceed-

ing). The supreme court concluded the other three district courts of Jefferson County were regular or constitutional district courts and that, to the extent the legislative acts being considered deprived the other three courts of their constitutional criminal jurisdiction, those acts were unconstitutional and void. *Id.* at 721–22. When *Lord* was decided, article V, section 8 specifically provided district courts had original jurisdiction "of all criminal cases of the grade of felony." TEX. CONST. art. V, § 8 (amended 1891).

Finally, in *In re Cockrell*, the Amarillo court was considering legislation pertaining to counties having two or more district courts and a juvenile board. 493 S.W.2d 620, 623 (Tex.Civ.App.-Amarillo 1973, writ ref'd n.r.e.). In such counties, the juvenile board was to designate one of the district courts to be the juvenile court of that county. *See id.* The Amarillo court concluded, "the legislature is not empowered to restrict the constitutional original jurisdiction and control of the district courts . . . over juveniles." *Id.* at 624. When *Cockrell* was decided, article V, section 8 specifically provided for district courts to have "original jurisdiction and general control over . . . minors under such regulations as may be prescribed by law," a provision that had been construed to extend to juveniles. *Id.* (quoting TEX. CONST. art. V, § 8 (amended 1891) and citing *Jones v. Alexander*, 122 Tex. 328, 59 S.W.2d 1080 (1933)).

In contrast to the constitutional provision in existence when the preceding cases were decided, the current version of article V, section 8, quoted above, while more general in its grant of jurisdiction to the district courts, also specifically envisions the enactment of laws conferring exclusive jurisdiction on other courts. The cases cited by the *Landry* court, construing a constitutional provision no longer in effect,

do not support a claim that Texas Government Code section 25.1032(c) violates the current version of Texas Constitution article V, section 8.

**(4) Procedural issues.** Aquila finally argues (1) the county court's jurisdiction followed Aquila's condemnation action with the transfer to the district court and (2) Taub waived any objection to the district court's jurisdiction. In support of the first argument, Aquila cites *Federal Underwriters Exchange v. Pugh*, 141 Tex. 539, 174 S.W.2d 598 (1943), and *International & Great Northern Railway Co. v. Brisenio*, 92 S.W. 998 (Tex.Civ.App.-San Antonio 1906, writ ref'd). In *Pugh*, a worker's compensation plaintiff filed his claim in the wrong court, and a statute allowed a district court (which had jurisdiction over the subject matter) where a claim was erroneously filed to transfer the claim to the district court in the county where the injury occurred. 174 S.W.2d at 600. *Brisenio* involved a wrongful death action filed in two different district courts of the same county, with the plaintiffs in the second-filed suit claiming the first suit was brought without their knowledge. After the plaintiffs in the second suit brought an action in the first court to annul the judgment of that court, the first court, pursuant to statute, ordered the annulment proceeding transferred to the second court, and the appellate court concluded that jurisdiction of the first court to try the suit to set aside its own judgment followed the case to the second court. 92 S.W. at 999. Neither case involved "exclusive" jurisdiction of the type involved in the case *sub judice*.

■ In support of its waiver argument, Aquila cites *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex.2000). In *Dubai*, the supreme court declined to treat as jurisdic-

tional the failure to meet statutory prerequisites for a wrongful death suit. *Id.* at 76. Instead, the court held the requirements affect a plaintiff's "right under the statute to go forward with this suit." *Id.* The court further stated all claims are presumed to fall within the jurisdiction of the district court unless the legislature has provided that they must be heard elsewhere. *Id.* at 75. Texas Government Code section 25.1032(c) grants civil courts at law in Harris County exclusive jurisdiction of eminent domain proceedings. Thus, consistent with *Dubai*, we hold the district court has jurisdiction over all claims brought below except Aquila's condemnation claim.

■ *Dubai*, however, does not support Aquila's contention Taub waived any objection to the district court's jurisdiction over Aquila's condemnation counterclaim filed in that court. Subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel at any stage of a proceeding. *In re Powers*, 974 S.W.2d 867, 871 (Tex.App.-Houston [14th Dist.] 1998, no pet.). Moreover, a lack of subject matter jurisdiction is fundamental error, which an appellate court must review anytime it appears. *John R. Phenix*, 6 S.W.3d at 290. When the record reflects lack of subject matter jurisdiction, it may be raised by the court if not raised by the parties. *See Texas Ass'n of Business*, 852 S.W.2d at 446 n. 10. Taub's failure to object to the district court's exercise of jurisdiction over Aquila's condemnation claim is of no moment.

The district court did not have jurisdiction over Aquila's condemnation counterclaim. We therefore vacate that part of the district court's judgment granting Aquila an easement over Taub's property and awarding Taub condemnation damages.[12]

12. We do not address Taub's issue one for the reason stated in note 5, above.

## II.

### The District Court's Summary Judgment on Taub's Claims

In issue two, Taub challenges the district court's summary judgment that Taub take nothing on his claims against Aquila. The purpose of summary judgment is to eliminate patently unmeritorious claims or untenable defenses; it is not intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).

### A. Standard of Review

The movant for summary judgment has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). When deciding whether there is a disputed material fact issue precluding summary judgment, the appellate court must take as true all evidence favorable to the non-movant. *Id.* at 548–49. The reviewing court must indulge every reasonable inference in favor of the non-movant and resolve any doubts in its favor. *Id.* at 549.

A defendant moving for traditional summary judgment assumes the burden of showing as a matter of law the plaintiff has no cause of action against him. *Levesque v. Wilkens*, 57 S.W.3d 499, 503 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Traditional summary judgment for a defendant is proper only when the defendant negates at least one element of each of the plaintiff's theories of recovery, or pleads and conclusively establishes each element of an affirmative defense. *Science Spectrum,*

*Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

Additionally, after sufficient time for discovery has passed, a party may file a "no evidence" motion for summary judgment if there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. *See* Tex.R. Civ. P. 166a(i). As with the traditional summary judgment, in reviewing a "no evidence" summary judgment, we review the evidence in the light most favorable to the non-movant and disregard all evidence and inferences to the contrary. *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 284 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

Because the propriety of summary judgment is a question of law, we review the trial court's decision *de novo*. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994). If, as here, the trial court grants a motion for summary judgment without stating the grounds on which it relied, we must affirm the summary judgment if any ground argued in the motion was sufficient. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995); *Blan v. Ali*, 7 S.W.3d 741, 747–48 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

### B. Taub's Challenges to Aquila's Summary Judgment Motion in the District Court

█ Focusing only on Aquila's second motion for summary judgment in the district court, Taub argues it was a hybrid motion requesting both a traditional summary judgment under Texas Rule of Civil Procedure 166a(b) and (c) and a no-evidence summary judgment under Rule 166a(i).[13] He additionally faults the mo-

---

13. The summary judgment in the district court was in response to Aquila's second and

third motions for summary judgment. Taub characterizes the third motion as not address-

tion for not clearly delineating the traditional components from the no-evidence components. He asks this court to review Aquila's motion as we would a traditional summary judgment motion. However, even viewing Aquila's motion as a traditional summary judgment motion, we conclude Aquila established, as a matter of law, Taub could not recover on his trespass claims.

Aquila's summary judgment motion was based in part on the argument that Aquila's condemnation of Taub's interest in the land precluded Taub's action in trespass.[14] Aquila argued Taub's trespass claim was barred as duplicative of Aquila's condemnation action because the damages were the same: reduction of the market value of Taub's property interest.

In this court, as it did in its summary judgment motion, Aquila relies on *Glade v. Dietert*, 156 Tex. 382, 295 S.W.2d 642 (1956). In *Glade*, the city's contractor began construction of a storm sewer on private property. *Id.* at 643. The city later instituted condemnation proceedings and deposited the condemnation award in the registry of the court. *Id.* Subsequently, the landowners sued the contractor for trespass. *Id.* The supreme court held that damages resulting from a prior trespass on land could be recovered in a suit to condemn the land on which the trespass occurred:

[T]he measure of damages is the same whether the issue is tried by special commissioners, in the county court on appeal or in the district court on cross-action or by intervention.

While technically it may be said that the entry by the contractor as the agent of the City constituted a separate cause of action against the City, yet, under the circumstances in such a case as this, to require the trial of two separate causes of action with double consumption of time and expense, when all of the damage actually was occasioned on account of the public improvement project and in pursuance thereto, would be a hardship on all parties, as well as useless and unnecessary.

*Id.* at 646. *See also O'Neil Corp. v. Perry Gas Trans., Inc.*, 648 S.W.2d 335 (Tex. App.-Amarillo 1983, writ ref'd n.r.e.) (concluding "the difference between the before- and the after-taking values provides full compensation to the landowner both for any diminution in value caused by the trespass and for the taking itself, thereby eliminating the need for a separate issue to determine trespass damages"). Under *Glade* and *O'Neil Corp.*, Aquila's condemnation action precludes Taub's trespass claim as a matter of law.

 We overrule Taub's issue two.[15]

---

ing his claims against Aquila. In Aquila's third motion, however, Aquila argued, in part, Taub could present no evidence of damages in addition to condemnation damages. Specifically, Aquila argued that after filing its second motion (in which it argued Taub could not demonstrate any injuries beyond those for which the condemnation action would compensate him), Aquila had requested Taub disclose the amount and any method of calculating damages. Aquila represented Taub refused to do so, and responded only that Aquila should refer to unspecified prior pleadings and discovery. This is clearly a no-

evidence argument. The second motion does not contain such a clear assertion of a no-evidence point in relation to Taub's general trespass claim. As discussed in note 15 below, however, the second motion does contain a clear assertion of a no-evidence point in relation to Taub's sign-trespass claim.

14. Aquila also argued the easements from Taub's co-tenants made Aquila a co-tenant, thus barring any trespass claim. Alternatively, Aquila argued it had a valid license to enter the property.

## III. Costs

In issue three, Taub, citing Texas Civil Procedure Rule 131, argues the trial court erred in assessing costs against him.[16] He contends he was the "successful party" because the trial court awarded him $1,386, and therefore, he should have recovered costs under Rule 131.[17] However, because we have vacated Taub's condemnation award, Aquila was the successful party on the only claims over which the district court had jurisdiction. Taub may not recover costs.

We overrule Taub's issue three.

## CONCLUSION

We hold a county civil court at law in Harris County has exclusive jurisdiction over Aquila's eminent domain proceedings. We further hold a county civil court at law in Harris County has jurisdiction to hear trespass-related claims such as those raised by Taub in the present case, regardless of the amount in controversy, but its jurisdiction does not preclude the district court from hearing such claims.

We therefore affirm the district court's judgment to the extent it incorporated its own take nothing summary judgment in favor of Aquila on Taub's claims against Aquila (which technically were not "inverse eminent domain" claims) and awarded costs against Taub. We vacate that portion of the district court's judgment granting Aquila its easement and awarding Taub condemnation damages. We order the district court to transfer Aquila's statutory eminent domain cause of action back to the County Civil Court at Law No. 3, and we remand the cause to the district court for this limited purpose. The remainder of the judgment of the district court is not affected by this court's decision.

---

15. In a three sentence paragraph, Taub refers to his cause of action for "sign trespass" and argues, because Aquila failed to show no trespass as a matter of law, Aquila failed to defeat this statutory cause of action. In its second motion for summary judgment, Aquila alleged, "Plaintiff has no evidence that Aquila did, in fact, place a sign on his property, an essential element of his claim for sign trespass. Moreover, any such claim would be barred as a matter of public policy." Taub points to no place in the record where he produced such evidence. Other than a general citation to "Chapter 80 of the Texas Civil Practice and Remedies Code," Taub provides no legal authority for this claim. An issue must be supported by argument and authorities to be properly before the court on appeal. *Knoll v. Neblett*, 966 S.W.2d 622, 639 (Tex. App.-Houston [14th Dist.] 1998, pet. denied).

Taub's claim in this regard is not sufficiently developed to warrant appellate review.

16. Rule 131 provides "The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided."

17. The award was for condemnation damages and it was less than Taub's share of the $3,234.70 initially offered by the condemnor to all owners. *See* TEX. PROP.CODE ANN. § 21.047(a) (Vernon 2000) (providing in part, if court's determination of damages is less than or equal to amount condemnor offered before proceedings began, property owner shall pay costs). Nevertheless, these arguments are moot based on our holding vacating the condemnation portion of the district court's judgment.